# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# VICINAGE OF TRENTON

| | |
|---|---|
| Roseanna A. Sias,<br>Eileen L. McMenamin,<br>Basilia Tsikentzoglou,<br>Paul Testa, and<br>John C. Wong<br><br>    Plaintiffs,<br><br>        v.<br><br>NEW JERSEY SECRETARY OF STATE<br>Tahesha Way, in her official capacity as Lt.<br>Governor and Secretary of State the State of<br>New Jersey;<br>NEW JERSEY DIVISION OF ELECTIONS;<br>Donna Barber, in her official capacity as<br>Acting Director for the New Jersey Division of<br>Elections<br><br>    Defendants. | <u>**Civil Action**</u><br><br>Hon. Michael A. Shipp, U.S.D.J.<br><br>Civil Action No. 3:24−CV−08747 |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS PLAINTIFFS' COMPLAINT

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2955
Levi.Klingerchristiansen@law.njoag.gov

Levi Klinger-Christiansen  (Attorney ID No. 334052020)
Erin Gilgen  (Attorney ID No. 329672021)
Charles Shadle  (Attorney ID No. 250252018)
Deputy Attorneys General
        On the Brief

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ...............................3

    A.    Statutory Background ...............................................................4

    B.    Adjudication of Ayyadurai's Nominating Petition.................................6

    C.    Plaintiffs' Complaint and motion for a temporary ..................................
          restraining order and preliminary injunction .......................................9

STANDARD FOR PRELIMINARY INJUNCTION............................................11

STANDARD FOR MOTION TO DISMISS.....................................................13

ARGUMENT ........................................................................................14

POINT I

    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW
    BECAUSE THEY ARE PRECLUDED AND LACK
    SUBSTANTIVE MERIT ........................................................................14

    A.    The Secretary of State's Final Agency Decision ....................................
          Regarding Ayyadurai's Nomination Petition has Preclusive Effect ....14

    B.    Defendants Were Authorized to Exclude Ayyadurai's ..........................
          Electors from the General Election Ballot...........................................19

POINT II

    THE EQUITIES HEAVILY DISFAVOR GRANTING A
    PRELIMINARY INJUNCTION .................................................................27

## TABLE OF AUTHORITIES

### Cases

*Acierno v. New Castle Cty.*,
    40 F.3d 645 (3d Cir. 1994) .................................................................13

*Adams v. Freedom Forge Corp.*,
    204 F.3d 475 (3d Cir. 2000) ...............................................................11

*Allen v. McCurry*,
    449 U.S. 90 (1980) ..............................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................13

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
    501 U.S. 104 (1991) ............................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................13

*Benisek v. Lamone*,
    138 S. Ct. 1942 (2018)........................................................................28

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................25

*Crookston v. Johnson*,
    841 F.3d 396, 398 (6th Cir. 2016)......................................................28

*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*,
    159 F.3d 129 (3d Cir. 1998) ...............................................................16

*Doe v. Univ. of Scis.*,
    961 F.3d 203 (3d Cir. 2020) ...............................................................13

*Donald J. Trump for President, Inc. v. Way*,
    492 F. Supp. 3d 354 (D.N.J. 2020)......................................................30

*First Union Nat. Bank v. Penn Salem Marina, Inc.*,

    921 A.2d 417 (N.J. 2007) ........................................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,

    564 U.S. 915 (2011) ................................................................................24

*Hassan v. Colorado*,

    495 Fed. Appx. 947 (10th Cir. Sept. 4, 2012) .................................... 8, 20, 21, 31

*Hassan v. FEC*,

    893 F. Supp. 2d 248 (D.D.C. Sept. 28, 2012) ......................................8, 21

*Hassan v. Iowa*,

    2012 U.S. Dist. LEXIS 188213 (S.D. Iowa April 26, 2012) .................... 8, 21, 22

*Hassan v. Montana*,

    2012 U.S. Dist. LEXIS 188196 (D. Mont. May 3, 2012) ...............................8, 21

*Hassan v. New Hampshire*,

    2012 U.S. Dist. LEXIS 15094 (D.N.H. Feb. 8, 2012) .............................. 8, 21, 22

*Helicopteros Nacionales De Columbia v. Hall*,

    466 U.S. 408 (1984) ................................................................................25

*Hope v. Warden York Cty. Prison*,

    972 F.3d 310 (3d Cir. 2020) ....................................................................12

*In re Burlington Coat Factory Sec. Litig.*,

    114 F.3d 1410 (3d Cir. 1997) .................................................................4, 13

*Kos Pharms. Inc. v. Andrx Corp.*,

    369 F.3d 700, 708 (3d Cir. 2004) .............................................................12

*Lum v. Bank of Am.*,

    361 F.3d 217 (3d Cir. 2004) .......................................................................4

*McNeil v. Legis. Apportionment Comm'n*,

    828 A.2d 840 (N.J. 2003) .........................................................................15

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,

    465 U.S. 75 (1984) ...............................................................................15

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,

    571 F.3d 299 (3rd Cir 2009).................................................................16

*North Carolina v. Covington*,

    137 S. Ct. 1624, 1626 (2017) ..............................................................28

*Pereira v. Fed Gov't of United States*,

    2023 U.S. Dist. LEXIS 78700 (D.N.J. May 4, 2023) .....................8, 21

*Reilly v. City of Harrisburg*,

    858 F.3d 173 (3d Cir. 2017). ...............................................................12

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,

    140 S. Ct. 1205, 1207 (2020) ..............................................................28

*Republican Party of Pa. v. Cortés*,

    218 F.Supp.3d 396 (E.D. Pa. 2016)......................................................30

*Revell v. Port Auth. Of New York & New Jersey*,

    598 F.3d 128 (3d Cir. 2010) .................................................................13

*Reynolds v. Sims*,

    377 U.S. 533 (1964) .............................................................................29

*Richards v. Jefferson County*,

    517 U.S. 793 (1996) .............................................................................17

*Sciortino v. Jarden, Inc.*,

    395 F.Supp. 429 (E.D. Pa. 2019)..........................................................24

*Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*,

    105 F4th 67 (3rd Cir. 2024)......................................................... 14, 18

*Sobel v. Long Island Entertainment Productions, Inc.*,

    747 A.2d 796 (N.J. App. Div. 2000) ...................................................25

*Sun Life Assurance Co. of Can. V. Wells Fargo Bank, N.A.*,
208 A.3d 839 (N.J. 2019) ...................................................................................24

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ...........................................................................................17

*Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*,
735 F.3d 131 (3d Cir. 2013) ...............................................................................12

*Truck Ctr., Inc. v. Gen'l Motors Corp.*,
847 F.2d 100, 102 (3d Cir. 1998) .......................................................................11

*Trump v. Anderson*,
601 U.S. 100 (2024) ................................................................................ 7, 8, 30

*Velasquez v. Franz*,
589 A.2d 143 (N.J. 1991) ............................................................................ 14, 15

*Wadeer v. New Jersey Mfrs. Ins. Co.*,
110 A.3d 19 (N.J. 2015) .....................................................................................18

*Watkins v. Resorts Int'l Hotel & Casino, Inc.*,
591 A.2d 592 (N.J. 1991) ...................................................................................14

*Winters v. N. Hudson Reg'l Fire & Rescue*,
50 A.3d 649 (N.J. 2012) .....................................................................................18

## **Statutes**

28 U.S.C. § 1738........................................................................................................15

52 U.S.C. § 20302......................................................................................................30

52 U.S.C.S. § 20302...................................................................................................29

N.J. Stat. Ann. § 19:11-1............................................................................................29

N.J. Stat. Ann. § 19:13-1..............................................................................................4

N.J. Stat. Ann. § 19:13-10................................................................................. passim

N.J. Stat. Ann. § 19:13-11....................................................................... 5, 22, 23

N.J. Stat. Ann. § 19:13-3.................................................................................4

N.J. Stat. Ann. § 19:13-4.................................................................................4

N.J. Stat. Ann. § 19:13-5.................................................................................5

N.J. Stat. Ann. § 19:14-1................................................................ 1, 6, 29, 31

N.J. Stat. Ann. § 19:14-8.1.......................................................................17, 26

N.J. Stat. Ann. § 19:15A-1..........................................................................6, 29

N.J. Stat. Ann. § 19:63-9.........................................................................6, 29, 30

N.J. Stat. Ann. § 52:14B-10.............................................................................5

N.J. Stat. Ann. § 52:14B-2...............................................................................5

N.J. Stat. Ann. § 52:14B-9...............................................................................5

## **Other Authorities**

Paul Clement and Neal Katyal, "On the Meaning of 'Natural Born Citizen,'" 128

    Harv. L. Rev. 161 (2015).........................................................................20

## **Rules**

*Fed. R. Civ. Pro.* 19(a)(1)(A).........................................................................31

N.J. Court Rule 2:2-3(a)(2) ...........................................................................5

## **Constitutional Provisions**

U.S. Const. Art. II, Sec. 1 ..................................................................... 20, 24

## **State Administrative Decisions**

*Camden County Democrats v. Cook*, STE 03281-21, Final Decision (April 14,

    2021) ......................................................................................................27

*New Jersey Democratic State Committee v. Forchion*, STE 0542-21, Final

    Decision (June 17, 2021)..........................................................................27

*Purpura, et al. v. Obama*, STE 04534-12, 2012 N.J. AGEN LEXIS 179 (NJ OAL

    April 10, 2012) ................................................................................. 22, 23

*Williams v. Cruz*, STE 05018-16, Final Decision (April 13, 2016) ......................23

## PRELIMINARY STATEMENT

On August 7, 2024, Defendant Tahesha L. Way, in her official capacity as Secretary of State of the State of New Jersey, issued a final agency decision, rejecting the nomination petition of presidential electors who pledged themselves to vote for Dr. Shiva Ayyadurai.  The matter had reached the Secretary after the New Jersey State Democratic Committee filed an objection to the petition on grounds that Ayyadurai is not a natural born citizen and is thus unqualified to serve as President of the United States under Article II, Section 1 of the United States Constitution. The matter was first heard before an Administrative Law Judge (ALJ) at the New Jersey Office of Administrative Law (OAL), where Ayyadurai admitted that he was not a natural born citizen.  The ALJ issued an initial decision recommending that the petition be rejected, which the Secretary of State adopted in a final agency decision. Ayyadurai sought emergent relief in the New Jersey Superior Court, Appellate Division and New Jersey Supreme Court, both of which denied his application.  The presidential electors for Ayyadurai have accordingly been excluded from New Jersey's general election ballots, which were required to be finalized by each of the state's county clerks as of Monday September 2, 2024.  *See* N.J. Stat. Ann. 19:14-1.

Plaintiffs, Roseanna A. Sias, Eileen L. McMenamin, Basilia Tsikentzoglou, Paul Testa, and John C. Wong are five of the fourteen electors who pledged themselves to Ayyadurai in the nominating petition that was ultimately rejected.

1

Clearly unsatisfied with the result of the state proceedings adjudicating the objection to their nominating petition, Plaintiffs now ask this court to enter a preliminary injunction, enjoining Defendants, the Secretary of State and Donna Barber, the Acting Director of the Division of Elections within the Department of State, from removing Plaintiffs and the other electors for Ayyadurai from the ballot. There are multiple reasons why this request must be rejected.

First, Plaintiffs' claims are precluded and otherwise lack merit. The Secretary of State's final agency decision, which rejected the petition filed by Ayyadurai nominating the electors for himself as an independent candidate for the office of President of the United States, is a final judgment on the merits. It thus has preclusive effect on Plaintiffs, who are in privity with Ayyadurai, and prevents them from relitigating Ayyadurai's failed arguments as to why that petition should have been accepted. And Plaintiffs' assertions that Defendants lacked jurisdiction or statutory authority to review the objection to the nominating petition lack merit, as Title 19 plainly authorizes the Secretary of State to review objections to such nominating petitions. *See* N.J. Stat. Ann. 19:13-10, -11.

Equitable concerns also heavily disfavor granting the requested injunction. For one, the general election ballots were statutorily required to be finalized on Tuesday September 3, 2024. Plaintiffs are thus seeking to upend the statutory deadlines governing elections in New Jersey, with the goal of placing presidential

2

electors on the ballot for a presidential candidate who is not constitutionally qualified to serve as President. The equities cannot possibly support granting such relief. And certainly, the *Purcell* principle, recommending that federal courts not "alter the election rules on the eve of election," militates against any change to the ballots, let alone a change that would place a constitutionally ineligible candidate on the ballot. Finally, Defendants are not the entities responsible for printing the ballots; the county clerks are. In that regard, Plaintiffs' complaint and motion are defective in that they have failed to name necessary parties.

Accordingly, this court should deny Plaintiffs' application for a temporary restraining order and preliminary injunction and grant Defendants' cross-motion to dismiss Plaintiffs' Complaint for failure to state a claim.

## **PROCEDURAL HISTORY AND STATEMENT OF FACTS**[1]

Plaintiffs are five of the fourteen presidential elector candidates on the direct nominating petition filed with Defendants on July 11, 2024 by Dr. Shiva Ayyadurai as an independent candidate for President of the United States. Complaint at ¶¶ 9, 23. Following an objection to Ayyadurai's nomination petition, Defendants excluded Ayyadurai and his electors from the general election ballot as an

---

[1]As the Procedural History and Statement of Facts are inextricably intertwined, they have been presented together for the purpose of clarity and for the Court's convenience.

independent presidential candidate because Ayyadurai is not a natural born citizen, which is a constitutional requirement for the office of President of the United States. Defendants' Exhibit A.[2]

A. <u>Statutory Background</u>

There are two methods to appear on the general election ballot in New Jersey: by primary election for a political party and direct nomination by petition.[3] N.J. Stat. Ann. § 19:13-1. When candidates for offices to be filled by voters of the entire State, including independent electors for the office of President and Vice President, are directly nominated by petition, the petition shall be filed with the New Jersey Secretary of State. *Id.* § 19:13-3. Such petitions must include the names, places of residence, and title of the office for which each candidate is named, *id.* § 19:13-4, along with a requisite number of signatures of eligible voters in support of the

---

[2] "All documents integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citations omitted). Defendants' Exhibit A is the Secretary of State's Final Agency Decision in *N.J. Democratic State Comm. v. Shiva Ayyadurai,* OAL Docket No. STE 10482-24, final decision (August 7, 2024), which is explicitly referenced in Plaintiffs' Complaint at paragraph 3. It is also a matter of "public record." *See Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to *Rule* 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, *matters of public record*, and documents that form the basis of a claim." (emphasis added)).

[3] Electors for President and Vice President affiliated with a political party are placed on the ballot via certificate of nomination by the State committee of the respective political party. N.J. Stat. Ann. § 19:13-15.

petition, *id.* § 19:13-5.  For petitions nominating independent electors of President and Vice President of the United States, the names of the respective candidates for President and Vice President may be included in the petition, *id.* § 19:13-4, and such petitions must include at least 800 signatures, *id.* § 19:13-5.

"Every petition of nomination in apparent conformity with the provisions of [Title 19] shall be deemed to be valid, unless objection thereto be duly made in writing with the officer with whom the original petition was filed . . ." *Id.* § 19:13-10.  "The officer with whom the original petition was filed shall in the first instance pass upon the validity of such objection in a summary way . . . and . . . shall have power to subpoena witnesses and take testimony or deposition." *Id.* § 19:13-11.  Upon receiving objections, the Secretary will transmit the matter to the OAL for an ALJ to recommend findings of fact and conclusions of law that the Secretary may either accept, reject, or modify in a final agency decision. *Id.* § 19:13-11, § 52:14B-2, § 52:14B-9 to -10.  "In the case of petitions nominating electors of candidates for President and Vice President of the United States . . . the Secretary of State shall file his or her determination in writing in his or her office on or before the 93rd day before the general election." *Ibid.*

After the adjudication of any petition challenges, followed by any potential appellate review, *see* N.J. Court Rule 2:2-3(a)(2) (providing a right to appeal final agency decisions to the New Jersey Superior Court Appellate Division), a series of

statutory deadlines guide the remainder of the electoral process.  First, the county clerks "shall have ready for the printer . . . on or before the 64th day prior to the general election a copy of the contents of the official ballots."  N.J. Stat. Ann. § 19:14-1.  From there, mail-in-ballots must be sent out "on or before the 45th day before the day an election is held."  N.J. Stat. Ann. § 19:63-9.  And finally, early voting then begins on the "10th calendar day before a general election."  N.J. Stat. Ann. § 19:15A-1.

    B. Adjudication of Ayyadurai's Nominating Petition

Ayyadurai filed a petition nominating presidential electors for himself with Defendants on July 11, 2024.  Complaint at ¶ 23.  On August 1, 2024, the New Jersey State Democratic Committee filed an objection to said nominating petition with Defendants.  Complaint ¶ 25; Ex. A.  The objection, which named Ayyadurai as the respondent, asserted that Ayyadurai is not a natural born citizen of the United States and is thus ineligible for the office of President.  Complaint ¶ 25.  The objection accordingly requested that the Secretary of State reject Ayyadurai's nominating petition.  *Ibid.*

Upon receiving the objection, the Secretary of State transmitted the matter to the OAL for a hearing before an ALJ.  Complaint ¶ 32; Ex. A.  At the hearing, Ayyadurai, who represented himself, admitted he was not a natural born citizen.

Defendants' Ex. B. at p. 3.[4]  He nonetheless asserted that the State of New Jersey lacked authority to remove a candidate for the office of President from the ballot, on grounds that the Division of Elections lacked subject matter jurisdiction and personal jurisdiction over the fourteen elector candidates, who were not named in the objection.  *Ibid.*; Complaint ¶ 32.  On August 5, 2024, the ALJ issued an initial decision recommending that Ayyadurai be excluded from the general election ballot. Ex. B. at p. 6.

On August 7, 2024, Ayyadurai filed written exceptions to the ALJ's initial decision with the Secretary of State.  Ex. A. at p. 2.  He asserted that: the ALJ incorrectly conflated eligibility to assume the office of President with eligibility to run as a candidate for President; the Secretary of State had previously allowed ineligible candidates onto the presidential ballot; the 5th and 14th Amendments prohibited excluding him from the ballot on the basis of national origin; the U.S. Supreme Court's decision in *Trump v. Anderson*, 601 U.S. 100 (2024) prohibits states from denying ballot access for federal office; and ballot access is a non-justiciable political question.  Ex. A at p. 2.

On August 7, 2024, the Secretary issued a final agency decision, adopting the ALJ's initial decision.  *Ibid.*  The Secretary's decision noted that similar attempts to

---

[4] Defendants' Exhibit B is the Initial Decision issued by Administrative Law Judge (ALJ) William T. Cooper III, which is referenced at paragraph 3 and is also a public record.

circumvent the natural born citizen requirement of Article II, Section 1 of the United States Constitution have been uniformly rejected across the country. *Id.* at p. 4 (citing *Hassan v. Colorado*, 495 Fed. Appx. 947 (10th Cir. Sept. 4, 2012); *Hassan v. FEC*, 893 F. Supp. 2d 248, 256-57 (D.D.C. Sept. 28, 2012); *Hassan v. New Hampshire*, 2012 U.S. Dist. LEXIS 15094 (D.N.H. Feb. 8, 2012); *Hassan v. Montana*, 2012 U.S. Dist. LEXIS 188196 (D. Mont. May 3, 2012); *Hassan v. Iowa*, 2012 U.S. Dist. LEXIS 188213 (S.D. Iowa April 26, 2012); *Pereira v. Fed Gov't of United States*, 2023 U.S. Dist. LEXIS 78700 (D.N.J. May 4, 2023)).

The Secretary's decision also distinguished the matter from *Trump v. Anderson*, which stands only for the proposition that states may not enforce Section 3 of the Fourteenth Amendment. *Id.* at p. 4-5. Because the objection to Ayyadurai's nomination petition was not based on Section 3 of the Fourteenth Amendment, the Secretary determined that case was inapplicable. *Id.* at p. 5. Rather the objection was based upon the presidential qualification clause, which has routinely been enforced by the states. *Ibid.*

Ayyadurai filed an emergent appeal with the New Jersey Superior Court Appellate Division on August 13, 2024, which challenged the Secretary of State's jurisdiction, on grounds that the Secretary of State and Division of Elections lacked personal jurisdiction over the fourteen elector candidates and that the actual candidates for President and Vice President are not offices that New Jersey voters

would be voting for.  Complaint ¶ 32.  The Appellate Division denied Ayyadurai's emergent application.  *Ibid*.  In denying the emergent application, the Appellate Division stated "Respondent admitted he is not a "natural born citizen" of the United States.  Therefore, he is ineligible to appear on the ballot as a candidate for the office of the United States President in 2024 per the United States Constitution. U.S. Const. art. II, § 1."  Defendants' Exhibit C.[5]  Ayyadurai then filed an application for emergent relief with the New Jersey Supreme Court, which was also denied. Complaint ¶¶ 32-33.

C. Plaintiffs' Complaint and motion for a temporary restraining order and preliminary injunction

On August 27, 2024, Plaintiffs filed the instant Complaint and motion for a temporary restraining order and preliminary injunction against the Secretary of State and the Acting Director of the Division of Elections.  Complaint; PI Motion.

Plaintiffs ask this court to assume original jurisdiction, and issue an order for declaratory and injunctive relief, directing Defendants to nullify the Secretary of State's final agency decision for lack of subject matter jurisdiction and personal jurisdiction, permanently enjoining the Defendants from removing Plaintiffs and the other electors from the New Jersey General Election ballot, and directing Defendants to certify all fourteen electors for the office of elector for President and Vice

---

[5] Defendants' Exhibit C is the Appellate Division's denial of Ayyadurai's emergent appeal application, which is referenced at paragraph 32 of Plaintiffs' Complaint.

President of the United States.  Complaint at pp. 20, 23-24, 27.  Plaintiffs assert that all of these alleged jurisdictional defects violated their First and Fourteenth Amendment rights under the United States Constitution.  Complaint ¶ 90.

Count One of the Complaint asserts that the Division of Elections and Secretary of State lacked "subject matter jurisdiction" to review the objection to Ayyadurai's nominating petition.  Complaint ¶¶ 49-71.  Plaintiffs argue that Title 19 does not authorize Defendants to oversee objections to the offices of President and Vice President because those offices are filled by electors voting a separate ballot at the Electoral College.  Complaint ¶ 51.  The Complaint accordingly alleges that the OAL proceedings against Ayyadurai "were done without any statutory authority derived from the New Jersey Election Code as the U.S. Constitution pre-empts such a bold request by objectors to remove a pledged U.S. Presidential candidate who is beyond the jurisdiction of the New Jersey Election Code."  Complaint ¶ 52.

Count Two of the Complaint alleges that the Division of Elections and Secretary of State lacked "personal jurisdiction" over the fourteen elector candidates for Ayyadurai because they were not named as respondents in the administrative proceedings.  Complaint ¶¶ 71-82.

Count Three alleges, "in the alternative," the New Jersey Democratic State Committee's objection to Ayyadurai's nominating petition was defective because it did not name the fourteen elector candidates and did not state an objection against

said electors.  Complaint ¶¶ 83-93.  Accordingly, Plaintiffs allege that the defective objection divested Defendants of subject matter jurisdiction.  *Ibid.*

Plaintiffs' motion for a preliminary injunction and temporary restraining order asserts that emergent relief is necessary because they have no adequate remedy at law for the alleged denial of their First Amendment right to associate.  PI Motion at p. 7.  They further assert that there is "no cost or burden involved to the Defendants," "the balancing of harms . . . weighs heavily in favor of Plaintiffs," and "based upon the provisions of the Election Code, they are likely to prevail upon the merits." *Ibid.* As such, Plaintiffs ask this Court to enjoin Defendants from removing Plaintiffs and the other fourteen elector candidates from the New Jersey general election ballot for the duration of this litigation.  *Id.* at 7-8.

Defendants' opposition to Plaintiffs' motion for a preliminary injunction and temporary restraining order follows.  Defendants also cross-move to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to *Rule* 12(b)(6).

## STANDARD FOR PRELIMINARY INJUNCTION

Courts have cautioned that the grant of injunctive relief "is an extraordinary remedy which should be granted only in limited circumstances." *Truck Ctr., Inc. v. Gen'l Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1998); *see also, e.g.*, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) (noting the "dramatic and

11

drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat").

> To grant injunctive relief, the moving party bears the burden of showing:
>
> (1) A likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"[A] movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Ibid.*

Moreover, because the relief that Plaintiffs seek here is a mandatory injunction that alters the status quo, a heightened standard applies: Plaintiffs must show not only a reasonable likelihood of success, but rather must demonstrate "a *substantial likelihood* of success on the merits and that their 'right to relief [is] indisputably clear.'" *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)) (emphasis added); *see also Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir.

1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").

## STANDARD FOR MOTION TO DISMISS

*Rule* 12(b)(6) requires dismissal where a complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court confronted with a *Rule* 12(b)(6) motion must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Revell v. Port Auth. Of New York & New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010).

In deciding a motion to dismiss, a court may consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record," *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (alteration in original) (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196), as well as "document[s] integral to or explicitly relied upon in the complaint," *id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

13

# ARGUMENT

## POINT I

### PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY ARE PRECLUDED AND LACK SUBSTANTIVE MERIT

To receive the requested injunctive relief, Plaintiffs must demonstrate a "substantial likelihood of success on the merits." *Hope*, 972 F.3d at 320. Plaintiffs cannot do so because their claims are: A) precluded under the doctrines of claim and issue preclusion; and B) substantively lack merit. For those same reasons, Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim pursuant to *Rule* 12(b)(6).

A. The Secretary of State's Final Agency Decision Regarding Ayyadurai's Nomination Petition has Preclusive Effect

Plaintiffs' claims are precluded by the Secretary of State's final agency decision. Ex. A. "Claim preclusion 'insulat[es] courts from the relitigation of claims'" by providing that "'a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding.'" *Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*, 105 F4th 67, 73 (3rd Cir. 2024) (quoting *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 597 (N.J. 1991); *Velasquez v. Franz*, 589 A.2d 143, 147 (N.J. 1991)). This doctrine relieves parties "of the cost and vexation of multiple lawsuits," conserves judicial resources, encourages reliance

14

on adjudication by preventing inconsistent decisions, and, because federal courts also accord preclusive effect to state court decisions, promotes comity between state and federal courts. *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980); *see also* 28 U.S.C. § 1738 (1976) (requiring federal courts to give preclusive effect to a state court judgment whenever the courts of that state would do so).

"[T]he preclusive effect of a state court judgment or order is determined by the law of the state that rendered the judgment," *Smith & Wesson*, 105 F4th at 73 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)), thus New Jersey's claim preclusion doctrine will apply. Under New Jersey law, claim preclusion requires (1) that the judgment in the prior action be "valid, final, and on the merits"; (2) that the parties in the later action be "identical to or in privity with those in the prior action"; and (3) that the claim in the later action "grow out of the same transaction or occurrence as the claim in the earlier one." *McNeil v. Legis. Apportionment Comm'n*, 828 A.2d 840, 859 (N.J. 2003); *see also Velasquez*, 589 A.2d at 147 (1991) (noting that claim preclusion applies to all valid and final "adjudication[s]' on the merits"). All three of these elements are met here.

First, the Secretary of State's final agency decision was valid, final, and on the merits. After full consideration of the record, the Secretary of State rejected Ayyadurai's petition nominating electors for himself as an independent candidate for the office of President of the United States. Ex. A at 5-6. "[U]nless a federal

15

statute specifically indicates that state agency decisions should not be considered conclusive, . . . factual findings of state agencies should be given the same preclusive effect they would be accorded in the courts of that state." *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 135 (3d Cir. 1998). "In addition, applying preclusive effect to legal conclusions made by state agencies 'is favored as a matter of general policy, [though] its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Ibid.* (quoting A*storia Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 109-10 (1991)).  Here, there is no basis, nor have Plaintiffs pointed to any, to not apply the favored policy of affording preclusive effect to the Secretary's legal conclusions.

Second, while Plaintiffs were not themselves parties to the prior action, it is well-established that preclusion can apply to a nonparty to the prior suit if the nonparty is in privity with one of the parties to the prior suit.  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3rd Cir 2009).  While "privity" was once thought to require a substantive legal relationship, such as a contract or a mutual or successive right or interest in the same property, "[o]ver time, the definition of privity has loosened" and there are now several recognized exceptions to the rule against nonparty preclusion.  *Id*. at 311.

16

One such exception is "certain limited circumstances" when the nonparty was "adequately represented by someone with the same interest" who was a party to the earlier action. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). The Plaintiffs in the instant matter were adequately represented by Ayyadurai in the earlier action. Given their respective roles as would-be electors and pledged candidate, their interests are inherently aligned and inextricable. Indeed, a pledged candidate is so well suited to represent his or her electors that, as Plaintiffs emphasize in their Complaint, the candidate's name literally stands in for the electors' on the ballot itself. *See* Complaint ¶¶ 45, 46; N.J. Stat. Ann. § 19:14-8.1.

In that same vein, another exception to the general rule against nonparty preclusion is if the nonparty is acting as a proxy for the previous litigant in the present matter. A party who is bound by a judgment "may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative [or agent] of a person who was a party to the prior adjudication." *Taylor*, 553 U.S. at 895. Because Plaintiffs' role as would-be electors is explicitly to support and facilitate Ayyadurai's election, Plaintiffs are essentially acting as his proxy. Permitting them to proceed would allow Ayyadurai to sidestep the Secretary of State's final agency decision.

17

Finally, Plaintiffs' claims arise out of the same occurrence as those in the prior action. "For two claims to grow out of the same occurrence, the claims must involve 'substantially similar or identical causes of action and issues, parties, and relief sought.'" *Smith & Wesson*, 105 F.4th at 76 (quoting *Wadeer v. New Jersey Mfrs. Ins. Co.*, 110 A.3d 19, 28 (N.J. 2015)). Claim preclusion "does not require exact sameness," but only a "high degree of similarity between the two actions." *Smith & Wesson*, 105 F.4th at 76 n.7. Here, both claims stem from the rejection of Ayyadurai's petition nominating electors for himself as an independent candidate for the office of President of the United States on the November 5, 2024 General Election ballot. They also raise the same issues, as Plaintiffs acknowledge when they note that Ayyadurai raised the same personal jurisdiction and subject matter jurisdiction issues during the state proceedings. Pl. Motion at p. 6. Finally, Plaintiffs and Ayyadurai ultimately seek the same relief – to have presidential electors for Ayyadurai included on the ballot.

Plaintiffs' claims are separately barred by the less demanding and more "flexible" standards of issue preclusion. *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 660 (N.J. 2012). Issue preclusion merely requires that

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding."

18

*First Union Nat. Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007) (citation omitted).

In the prior proceeding, the Secretary of State adopted the ALJ's conclusion that Ayyadurai is ineligible to hold the office of President of the United States and, therefore, he is not eligible to be on the ballot.  Ex. A at 5-6; Ex. B at 3-6.  This same issue is essential to Plaintiffs' claims in the present matter.  This issue was actually litigated during the administrative action, and the Secretary of State issued a final judgment on the merits after full consideration of the record.  *Ibid*.  Determination of these issues was essential to the prior judgment, and finally, as noted above, Plaintiffs are in privity with Ayyadurai, who was a party to that proceeding. Accordingly, issue preclusion also forecloses Plaintiffs' claims.

B. <u>Defendants Were Authorized to Exclude Ayyadurai's Electors from the General Election Ballot</u>

Setting aside that Plaintiffs' claims are precluded, they also lack merit. Plaintiffs' three claims all make the same primary argument:  Defendants lacked jurisdiction or were otherwise unauthorized under Title 19 to exclude Ayyadurai and his electors from the General Election ballot.   Complaint at pp. 20, 23-24, 27. Plaintiffs first assert that Defendants did not have subject-matter jurisdiction to oversee an objection to Ayyadurai's qualifications because he was not the actual candidate on the ballot, but rather his electors were.  *Id*. ¶¶ 49-70.   Next, Plaintiffs

19

assert that Defendants did not have personal jurisdiction over Plaintiffs and the other electors because they were not named as respondents in the objection to Ayyadurai's nominating petition. *Id.* ¶¶ 71-83. And finally, Plaintiffs assert that there were defects in the Democratic State Committee's objection to the nominating petition, which prevented Defendants from reviewing the objection. *Id.* ¶¶ 84-93.

As a preliminary matter, it is beyond dispute that Ayyadurai, the candidate who Plaintiffs have pledged themselves to elect, is constitutionally unqualified to serve as the President of the United States. *See* Ex. A; Ex. B.; Ex. C. "No person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President." U.S. Const. Art. II, Sec. 1. It is generally agreed that "the phrase 'natural born Citizen' has a specific meaning: namely, someone who was a U.S. citizen at birth with no need to go through a naturalization proceeding at some later time." Paul Clement and Neal Katyal, "On the Meaning of 'Natural Born Citizen,'" 128 Harv. L. Rev. 161 (2015). In the state proceedings, Ayyadurai plainly admitted he is not a natural born citizen. Ex. B. at p. 3. Instead, he made unavailing legal arguments as to why Article II, Sec. 1 of the Constitution could not be enforced by the State. *Ibid.*

As noted in the Secretary of State's final agency decision, attempts to gain ballot access in circumvention of the presidential qualifications clause have been uniformly rejected by federal courts across the country. See *Hassan v. Colorado*,

495 Fed. Appx. at 948 (affirming magistrate judge's finding that "the Fourteenth Amendment did not affect the validity of Article II's distinction between natural-born and naturalized citizens"); *Hassan v. FEC*, 893 F. Supp. 2d at 256-57 (rejecting the argument that the "natural born citizen requirement has been implicitly repealed by the Fifth and Fourteenth Amendments"); *Hassan v. New Hampshire*, 2012 U.S. Dist. LEXIS 15094 (holding same); *Hassan v. Montana*, 2012 U.S. Dist. LEXIS 188196 (D. Mont. May 3, 2012) (holding same); *Hassan v. Iowa*, 2012 U.S. Dist. LEXIS 188213 (S.D. Iowa April 26, 2012) (holding same)*; see also Pereira v. Fed. Gov't of United States,* 2023 U.S. Dist. LEXIS 78700, at *4 (rejecting a naturalized citizen's asserted right to run for President, noting "[i]t would be extraordinary for a district court to declare the Constitution itself to be unconstitutional . . . [t]he only recourse, then, would appear to be a Constitutional amendment.").

Moreover, Article II, Section 1 of the United States Constitution has regularly been enforced by states with the approval of several federal courts.  "[A] state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office." *Hassan v. Colorado*, 495 Fed Appx. at 948; see also *Hassan v. Montana*, 2012 U.S. Dist. LEXIS 188196, *1-2 (rejecting the plaintiff's argument that "the Montana Secretary of State [] wrongfully denied him the opportunity to appear on Montana's election ballot as a candidate for President

of the United States because he is a naturalized citizen of this country"); _Hassan v._ _New Hampshire_, 2012 U.S. Dist. LEXIS, at *10 (holding "New Hampshire's state laws requiring all presidential candidates to affirm that they are natural born citizens are constitutional"); _Hassan v. Iowa_, 2012 U.S. Dist. LEXIS 188213, at *1, *13-*18 (upholding a similar statutory scheme). To the extent Plaintiffs, like Ayyadurai, argue that the State may not enforce the Constitution's presidential qualifications clause, that argument is entirely refuted by relevant case law and lacking in substantive merit.

Plaintiffs' Complaint and motion, attacking the Defendants' Constitutional and statutory authority to review the nomination petition and objection thereto, amounts to nothing more than another misguided attempt at circumventing the federal Constitution's natural-born citizen qualification. The Secretary of State is explicitly authorized, and required, to hear objections to direct nominating petitions for presidential electors. _See_ N.J. Stat. Ann. § 19:13-11 (directly authorizing the Secretary of State to issue a determination of an objection to "petitions nominating electors of candidates for President and Vice President of the United States"); _see also Purpura, et al. v. Obama_, STE 04534-12, 2012 N.J. AGEN LEXIS 179, at *4 (NJ OAL April 10, 2012) ("The nomination of any person to any public office may be challenged on the ground that the incumbent is not eligible for office at the time of the election."). Yet, Plaintiffs assert that N.J. Stat. Ann. § 19:13-11 narrowly

allows the Secretary of State to only review the qualifications of elector candidates, but not the qualifications of the Presidential candidate they have pledged themselves to. Complaint ¶ 51. This is an incorrect reading of the statute and would otherwise amount to a patently absurd result.

First, the statutory scheme speaks in terms of objections to nominating "petitions," not candidates. *See* N.J. Stat Ann. § 19:13-10 ("Every *petition* of nomination in apparent conformity [with Title 19] shall be deemed valid, unless objection thereto be duly made . . ."); N.J. Stat Ann. § 19:13-11 ("In the case of *petitions* nominating electors of candidates for President and Vice President of the United States . . .  the Secretary of State shall file his or her determination in writing . . ."). An objection to a nominating petition can thus be directed at the ineligibility of the Presidential candidate to which the elector candidates have pledged themselves. *See Purpura*, STE 04534-12; *see also Williams v. Cruz*, STE 05018-16, Final Decision (April 13, 2016) (adjudicating a challenge to the eligibility of a presidential candidate). Nowhere does Title 19 limit such petition objections to the qualifications of the electors themselves. As such, the Secretary of State was statutorily required to review the objection to the petition on grounds that Ayyadurai is ineligible to serve as President. Aside from any objection to the qualifications of any individual elector, a valid objection was made to the *petition* as a whole: That

the presidential candidate to which all the electors had pledged themselves is barred from serving as President under the Constitution.  U.S. Const. Art. II, Sec. 1.

Second, interpreting the statute as Plaintiffs suggest would insulate from review any constitutionally ineligible Presidential candidate's placement on New Jersey's general election ballot, so long as his or her elector candidates were qualified to serve as electors.  That is an absurd result, which must be avoided when interpreting New Jersey statutes.  *See Sun Life Assurance Co. of Can. V. Wells Fargo Bank, N.A.*, 208 A.3d 839, 849 n.3 (N.J. 2019) ("Statutes cannot be construed to lead to absurd results.  All rules of construction are subordinate to that obvious proposition" (internal quotations omitted)).

Plaintiffs' argument that the Defendants lacked "personal jurisdiction" over them and that the objection to the nominating petition was otherwise deficient because it did not name and serve Ayyadurai's electors as respondents is similarly unavailing.  See Complaint at, e.g., ¶¶ 2, 76-80. For one, Plaintiffs misconstrue the concept of personal jurisdiction, which pertains to a "court's power over parties to a lawsuit."  *Sciortino v. Jarden, Inc.*, 395 F.Supp. 429, 434 (E.D. Pa. 2019).  Because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power," it is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause*." Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-919 (2011).  At base, to comport with the Fourteenth Amendment, a

defendant must have some minimum contact with the forum state, from which the plaintiff's claim arises out of or relates to, or otherwise consent to personal jurisdiction. *See Helicopteros Nacionales De Columbia v. Hall*, 466 U.S. 408, 414 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985). Where someone is an appropriate party to a case, and a court has the commensurate power to bring them into the case, personal jurisdiction is completed through the notice that valid service of process brings. *See, e.g.*, *Sobel v. Long Island Entertainment Productions, Inc.*, 747 A.2d 796, 801 (N.J. App. Div. 2000) ("[O]ur service-of-process rules prescribe particular procedures for effecting service in order to acquire *in personam* jurisdiction.").

These concepts however, are entirely inapposite here, where Plaintiffs were not required parties to the objection filed against the nominating petition. Again, the Secretary is statutorily required to review petitions submitted to her office and any objections thereto. N.J. Stat. Ann § 19:13-10, -11. The Democratic State Committee's objection to the nominating petition was not directed at the qualifications of the electors but rather the qualifications of Ayyadurai. Complaint ¶ 25. Ayyadurai was thus appropriately named as respondent, as he was the individual who filed the petition, whose qualifications were under question, and who was "affected thereby." N.J. Stat. Ann. 19:13-10. While it is true that Plaintiffs and Ayyadurai's other electors were technically the candidates to be voted on, it is

Ayyadurai's name as the Presidential candidate, not Plaintiffs', that would ultimately have been placed on the ballot but for the valid objection raised against the petition. *See* N.J. Stat. Ann. § 19:14-8.1 ("When Presidential Electors are to be elected, their names shall not be printed upon the ballot . . . but in lieu thereof, the names of the candidates of their respective parties or political bodies for President and Vice-President shall be printed together in pairs under the title 'Presidential Electors for.'"). Hence, it was appropriate for the matter to proceed against only Ayyadurai and the validity of the petition, rather than his electors. And in any event, Ayyadurai's interests are directly aligned with Plaintiffs. *See* Supra Point I. A. In that regard, as noted by Plaintiffs, Ayyadurai raised the same arguments they would have had they been named. Complaint ¶ 32. Personal jurisdiction need not be established over the elector candidates for the Secretary to review the petition submitted to her office.

Finally, Plaintiffs' third claim, which is largely duplicative of their first two claims, argues that alleged defects in the Democratic State Committee's objection prevented the Defendants from reviewing the objection. As already noted above, it was entirely permissible for the objection to only name Ayyadurai as the respondent, because the petition objection was premised on his constitutional ineligibility. Moreover, Plaintiffs' suggestion that the Democratic State Committee was not a qualified objector, Complaint ¶¶ 84, 86, is also entirely untethered from the relevant

statute.  *See* N.J. Stat. Ann.  § 19:13-10.  Without any citation, Plaintiffs assert that objector may only file an objection if "the objector is a registered voter in the same district or political division of the objector [sic.]."  Yet, the relevant statute has no such requirement.  Instead, it merely states that a petition in apparent conformity with Title 19 will be deemed valid "unless objection therefore be duly made."  N.J. Stat. Ann. § 19:13-10.  Nowhere, does the statute limit who the objection must come from. And, it should be noted that petition objections regularly come from political party organizations.  *See e.g.*, *Camden County Democrats v. Cook*, STE 03281-21, Final Decision (April 14, 2021); *New Jersey Democratic State Committee v. Forchion*, STE 0542-21, Final Decision (June 17, 2021).

For these reasons, Plaintiffs' claims fail as a matter of law.  Plaintiffs' have failed to show a likelihood of success on the merits and thus, their Motion for a Preliminary Injunction should be denied.  Further, their Complaint should be dismissed with prejudice.

## POINT II

### THE EQUITIES HEAVILY DISFAVOR GRANTING A PRELIMINARY INJUNCTION

Not only does Plaintiffs' application fail to demonstrate a likelihood of success on the merits, but granting an injunction would do more harm than good and

would be against the public interest.[6]  This Court should deny Plaintiffs' application under the well-established principle that federal courts should not disturb the rules governing elections so close to the time of their administration.  *See Purcell v. Gonzalez*, 549 U.S. 1 (2006).

As the Supreme Court has repeated, injunctions on the eve of an election are heavily disfavored.  *See Purcell*, 549 U.S. at 4-5.  "[F]ederal courts should ordinarily not alter the election rules on the eve of an election."  *Republican Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell*, 549 U.S. 1; *Frank v. Walker*, 574 U.S. 929 (2014); *Veasey v. Perry*, 135 S. Ct. 9 (2014)); *Brakebill*, 139 S. Ct. 10 (2018) (Ginsburg, J., dissenting); *Benisek v. Lamone*, 138 S. Ct. 1942, 1944-45 (2018) (per curiam); *see also Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("[C]all it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.").

There are good reasons for this well-established rule.  "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."  *Purcell*, 549 U.S. at 4-5; *see also North Carolina v. Covington*, 137 S. Ct. 1624, 1626 (2017) (noting that, in elections cases, a court must

---

[6] Because the nonmoving party in this case involves the State, the third and fourth injunctive relief factors are one and the same.

assess the "extent of the likely disruption" to the upcoming election, and "the need to act with proper judicial restraint when intruding on state sovereignty," before granting relief); *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (explaining that the federal "court[s] can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree").

The ramifications of granting an injunction in the immediate matter are not merely matters of principle. Indeed, an injunction at this juncture could have a profound disruptive effect on the conduct of the upcoming November 2024 General Election and possibly result in violations of federal law. As Plaintiffs acknowledge, New Jersey election officials "will order the printing of paper ballots, and commence mailing overseas and military ballots in September." Pl. Motion at p. 2. In fact, the deadline for county clerks to finalize ballots for printing and send them to the printers has already passed as that occurred on September 3, 2024. N.J. Stat. Ann. § 19:14-1; N.J. Stat. Ann. § 19:11-1. From there, mail-in ballots must be mailed to voters on September 21, 2024. N.J. Stat. Ann. § 19:63-9. This deadline is critically important, as it corresponds with federally-imposed election law deadlines. 52 U.S.C. § 20302. Finally, early voting will begin in New Jersey on October 26, 2024. N.J. Stat. Ann. § 19:15A-1.

Here, Plaintiffs filed their complaint and application for a temporary restraining order less than a week before the statutory deadline for finalizing the ballots – a deadline which has since passed. Should Plaintiffs' temporary restraining order be granted, it would require the county clerks to update the ballots after the statutory deadline, and could consequently result in further delay of other statutory deadlines, such as the date mail-in ballots must be sent out. *See* 52 U.S.C. § 20302 and N.J. Stat. Ann. § 19:63-9. Such disruption, and the fallout resulting from said disruption, would be "significant." *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 375 (D.N.J. 2020); *see Republican Party of Pa. v. Cortés*, 218 F.Supp.3d 396, 404-05 (E.D. Pa. 2016) (finding that last minute intervention in an election "risks practical concerns including disruption, confusion or other unforeseen deleterious effects").

Further, for the reasons noted above, Plaintiffs' pledged presidential candidate is patently ineligible under the United States Constitution to hold the office of President of the United States. *See* Supra Point I. B. Plaintiffs' application seeks an order from this Court upending statutory deadlines that have already passed in an attempt to have a candidate who is ineligible to run for the office of President of the United States placed on the ballot as a candidate for such office. Delaying the printing and mailing of ballots for the rapidly approaching general election not only pose a significant risk to the administrability of the election generally, but doing so

30

on behalf of a candidate not eligible to hold the office sought harms the public's general interest in the integrity and practical functioning of the electoral process. *See Hassan v. Colorado*, 495 Fed Appx. at 948.

Finally, the New Jersey election officials responsible for preparing and printing ballots are the county clerks.  *See* N.J. Stat. Ann. § 19:14-1.  Plaintiffs' application seeks an order enjoining Defendants from "removing" Plaintiffs and nine other independent presidential elector candidates from the November 2024 General Election ballot.  Pl. Motion at p. 2.  Given that Plaintiffs' application in essence seeks to delay the ballot printing process for the pendency of the litigation, it is clear that this Court "cannot accord complete relief among existing parties" in the absence of the county clerks.  *Rule* 19(a)(1)(A).  Therefore, Plaintiffs have failed to name all indispensable parties in their complaint and application for a temporary restraining order.  Accordingly, this court should deny Plaintiffs' application.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' request for a temporary restraining order should be denied, Defendants' cross-motion to dismiss should be granted, and the Complaint should be dismissed with prejudice.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    s/Levi Klinger-Christiansen
           Levi Klinger-Christiansen
           Deputy Attorney General

DATED: September 9, 2024