IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Roseanna A. Sias,<br>Eileen L. McMenamin,<br>Basilia Tsikentzoglou,<br>Paul Testa, and<br>John C. Wong,<br>     Plaintiffs,<br>   v.<br><br>NEW JERSEY SECRETARY OF STATE<br>Tahesha Way, in her official capacity as Lt.<br>Governor and Secretary of State the State of<br>New Jersey;<br><br>NEW JERSEY DIVISION OF ELECTIONS;<br>Donna Barber, in her official capacity as<br>Acting Director for the New Jersey Division<br>of Elections,<br>     Defendants. | Civil Action No.<br>3:24-CV-08747-MAS-RLS |

**PLAINTIFFS RESPONSE TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

  Pursuant to the Honorable Judge's request, Plaintiffs Pro Se Roseanna A. Sias, Eileen L. McMenamin, Basilia Tsikentzoglou, Paul Testa, and John C. Wong, file this response to Defendants' opposition to Plaintiffs' *Temporary Restraining Order and Preliminary Injunction*. On September 23, 2024, Plaintiffs will file an additional response to Defendants' *Motion for Dismiss Plaintiffs' Complaint*.

  **I. Plaintiffs Have Likelihood of Success on the Merits**

  The Plaintiffs have a high likelihood of success on the merits. The facts are detailed in the two (2) documents: the Verified Complaint and the request for Preliminary Injunction, previously submitted to this honorable court. The facts are:

1

1. The Plaintiffs fulfilled every statutory qualification to be the independent presidential elector candidates ("Elector Candidates") pledged to presidential candidates Dr. Shiva Ayyadurai ("Pledged Candidate").

2. Plaintiffs and Elector Candidates exercised their First and Fourteenth Amendment rights in choosing their Pledged Candidate of choice. It should be noted, Elector Candidates can also change the Pledged Candidate e.g. "faithless electors"

3. The Plaintiffs achieved and exceeded every statutory requirement to be the Elector Candidates to be placed on the ballot with their slate denoted by the label "Dr. Shiva Ayyadurai/Crystal Ellis."

4. In New Jersey as in other States, the Elector Candidates are the "candidates" for the Office of Elector; there is not an Office of President that the Pledged Candidate can run for in New Jersey nor in any other State.

5. The Plaintiffs were qualified and fulfilled all requirements to be placed on the ballot.

6. Defendants did NOT provide any notice to Plaintiffs of challenges to their candidacy as Elector Candidates

7. Defendants did NOT provide due process to Elector Candidates to provide response to any of objections to their candidacy

<u>Defendants Instead of Providing Due Process to the Elector Candidates, Prematurely Adjudicated and Enforced Against the Pledged Candidate Qualifications *to Hold* the Office of President, Which Exceeds Their Authority Particularly in Light of the Fact they Had No Statutes Passed by the Legislature Which Affords Them the Right to Do So</u>

The facts (1) – (6) reveal that Defendants had no right whatsoever to throw Plaintiffs and Elector Candidates from the New Jersey ballot. They fulfilled every

qualification and requirement to be on the ballot. Defendants instead of providing due process to Elector Candidates, "put the cart before the horse," and began adjudicating the qualifications of their Pledged Candidate, Dr. Shiva Ayyadurai – "Dr.Shiva" - and even went so far as to enforce qualifications for *holding* the office of President against him to deny their Pledged Candidate his First and Fourteenth Amendment right from *running* for the Office.

Defendants must know, concerning the appointment of Electors of the President and Vice President of the United States, the U.S. Constitution creates and defines the Electoral College as the only process by which each State's Electors vote by ballot to elect the President and Vice President of the United States.

No State may add qualifications beyond those stated in the U.S. Constitution for ballot eligibility of New Jersey Electors for the President and Vice President of the United States, and may not directly or indirectly infringe upon federal constitutional protections; see e.g., *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827, 115 S.Ct. 1842, 1866 (1995).

On July 11, 2024, fourteen independent presidential elector candidates ("Elector Candidates") jointly submitted 1,294 signatures of New Jersey voters to qualify those fourteen Elector Candidates as New Jersey independent Electors at the November 5, 2024 general election; the fourteen Elector Candidates submitted nomination papers specifically for the U.S. Constitutionally defined office of "Elector of President and Vice President of the United States." U.S. Const. art. II, § 1.

The New Jersey Election Code requires submission of at 800 signatures in the aggregate from New Jersey voters. *N.J.S.A. 19:13-5.*

On August 1, 2024, The New Jersey State Democratic Committee, was identified as objector who filed an objector's petition against pledged independent presidential candidate Dr. Shiva Ayyadurai. Please see objector's petition. The Objector's Petition requested that the NJDOE issue a decision addressing Dr. Shiva Ayyadurai, not the Elector Candidates. None of the Plaintiffs or the Elector Candidates were named in the Objection.

<u>The Defendants Went After the Wrong Person (the Pledged Candidate Dr. Shiva), Since the Right Person (Elector Candidates) Had Done Nothing Wrong</u>

Dr. Shiva represented himself as Respondent Pro Se at the New Jersey Office of Administrative Law ("NJOAL") hearing on August 5, 2024. On August 6, 2024, the OAL hearing officer issued his Initial Decision in which the hearing officer advised the NJSOS to remove Dr. Shiva from the general election presidential ballot.

The NJOAL's analysis was severely flawed, and a close analysis reveals how a low-level hearing officer's misapplication of the law - literally creating the law "on-the-fly" – gets percolated upward, and rubber-stamped by agency heads and even by judges, all the way to state supreme courts.

In approaching this analysis, the work of one of the leading scholars on ballot access and the rights of States to adjudicate qualifications of the Presidency, provides a "North Star" (emphasis added):

"States lack any power to evaluate qualifications in congressional elections, **<u>and any power to evaluate qualifications in presidential elections arises solely from the force of its own statutes.</u>** **Because of the review of qualifications that**

**occurs in the people, electors, political parties, and Congress, <u>the need for the state to review is slight</u>."**[1]

States must be circumspect in prohibiting candidates for President from *running* for the Office, even though the candidate may be "ineligible" for *holding* the Office. As aforementioned, States should only do so if they have explicit statutes, passed by the State legislature, that allow them to do so. Why? Because, the Office of President is elected by all the people, and there are sufficient mechanisms - "**people, electors, political parties, and Congress**" – who can intervene to prevent an "ineligible" candidate from holding the Office.

Based on this North Star, the NJOAL's analysis has no basis in any State statute that allows the State of New Jersey to remove a presidential candidate from the ballot and to stop the candidate's running for the Office based on that candidate being "ineligible" to hold the Office. Since no such statute exists, the NJOAL hearing officer was grabbing for straws and built a "house of cards" to support his decision to remove Dr. Shiva off the ballot.

Here's how his flawed analysis went:

First, after acknowledging that Dr. Shiva and his Electors accomplished every State-mandated requirement to be on the ballot, the NJOAL hearing officer asserted

---

[1] Muller, Derek T. (2015) "Scrutinizing Federal Electoral Qualifications," Indiana Law Journal: Vol. 90: Iss. 2, Article 3.

that Dr. Shiva is "ineligible" to *hold* the Office of President since he is not "natural born," after which he posed the following question:

> The next issue to be determined is whether **an ineligible candidate for President can still appear on the ballot as an independent if their nominating petition is in conformity** with the provisions of *N.J.S.A. Title 19*.

Second, and most importantly, the NJOAL hearing officer admitted that he has no basis in any New Jersey Statute to make his decision (emphasis added); however, he will still proceed to do so:

> While there are **no specific regulations or case law that address the issue**, the way that **other cases** have treated this issue leads to the conclusion **that an ineligible candidate for president should not be on the ballot**.

Third, the NJOAL hearing officer's analysis should have just ended here! Given there are no "specific regulations" i.e. State Statutes, the officer should have stopped and simply said, "there is nothing stopping Dr. Shiva from *running* for the Office and being on the ballot, given Dr. Shiva fulfilled and exceeded very State-mandated requirement to be on the ballot."  He should have further stated, it is up to the "**people, electors, political parties, and Congress**" to decide, given Dr. Shiva is not "natural born," whether he should be *holding* the Office.  Period.

However, this hearing officer went to extremes to piece together a flawed framework, none of it based on New Jersey Statutes, to conclude:

> Respondent did not have to prove his eligibility prior to the challenge.  **However, now that there is a challenge, it follows that he needs to prove his eligibility,** and since he cannot, he should not be placed on the ballot.  Also, **it is logical that someone who is ineligible to be president**

6

> **cannot be on the presidential ballot, even as an independent.**

This nonsensical logic and disingenuity, goes against the face of New Jersey's own practice since 1972, as aforementioned, where New Jersey allowed many candidates to run for Office, who were clearly "ineligible" to hold the Office. **For example, New Jersey <u>allowed</u> Linda Jenness, Larry Holmes, Peta Lindsay, <u>all</u> below age 35; and even a Nicaraguan citizen Roger Calero, who was neither a "natural born" nor naturalized U.S. citizen, to *run* for President.**

These individuals were *all* "ineligible" to *hold* the Office!

This fact was brought up by Dr. Shiva at the NJOAL hearing. The response from the NJOAL hearing officer at the hearing on this matter was deafening silence. Moreover, the NJOAL hearing officer did not address this contradiction even in his NJOAL Initial Decision as to why those other candidates were given ballot access and Dr. Shiva was not.

In addition, the NJOAL erroneously sought, in the Initial Decision, to narrow the implications of the precedential *Trump v. Anderson* ruling to Section 3 of the Fourteenth Amendment, U.S. Const. amend. XIV, completely ignoring the aim of this Court: to prevent a "chaotic state-by-state patchwork." And, this is precisely what has occurred since the New Jersey ruling. Some States have taken Dr. Shiva of the ballot by unconstitutionally extending their authority, and others have kept him on the ballot.

This Initial Decision from the NJOAL was passed on to the NJSOS. On August 7, 2024, the NJSOS issued their Final Decision and removed Dr. Shiva from the ballot

to end his running for President. App. 6a-12a.  Here are the problems with the NJSOS' Final Decision:

1) The NJSOS simply cut-and-pasted the flawed NJOAL decision, likely assuming the low-level hearing officer's analysis was based on Statutes not on ad hoc legal theory;

2) The NJSOS' Final Decision repeatedly chants *Hassan, Hassan, Hassan*, while ignoring this simple fact: Hassan never got on the ballot in **any State**, never had a real campaign, never had presidential electors who worked day and night to collect thousands upon thousands of petition signatures to get ballot access, etc.  In short, Hassan was not a bona fide or diligent candidate like Dr. Shiva;

3) The NJSOS' Final Decision is deafeningly silent on Linda Jenness, Peta Lindsay, Roger Calero and Larry Holmes – all "ineligible" candidates to *hold* the Office who NJSOS' allowed to run for the Office. In fact, the NJSOS allowed non-"natural born," non-naturalized citizen, Roger Calero on the ballot twice; and,

4) The NJSOS' Final Decision has no basis in law per that North Star as there is no State Statute that allows New Jersey election officials to prematurely disqualify a candidate from *running* for the Office by applying constitutional qualifications for *holding* the Office.

In fact, the NJOAL and the NJSOS decisions incite that very "chaotic state-by-state patchwork," which has now emerged in Dr. Shiva's situation, that Supreme Court so sought to avoid in *Trump v. Anderson*.

8

Following the flawed ruling of the NJSOS in their Final Decision, Dr. Shiva filed an Emergent Appeal Application to the Superior Court. The New Jersey Judiciary Appellate Division on August 13, 2024, however, dismissed Dr. Shiva's request, further erroneously and unconstitutionally rubber-stamping the NJOAL's flawed analysis that the State had the right to end Dr. Shiva's running for the Office, since he may be "ineligible" from holding the Office. Specifically, the Appellate Division stated:

> Respondent admitted he is not a "natural born citizen" of the United States. Therefore, he is ineligible to appear on the ballot as a candidate for the office of United States President in 2024 per the United States Constitution. U.S. Const. art. II, § 1.

This judgement conflates "running" for the Office with "holding" the Office. The "natural born" provision is for "holding" the Office of President. This decision further asserts that the State has some authority to create extra-Constitutional qualifications i.e. that Dr. Shiva must be a "natural born" citizen to *run* for the Office. The State has no such right. Even if it did per that North Star, there would have to be a specific and explicit Statute passed by the New Jersey legislature.

**No such Statute exists!**

Moreover, even if a Statute existed, which does not, multiple and differing State Statutes would result in a "patchwork" that his Court seeks to avoid. In response to the flawed analysis and dismissal by the Appellate Division, Dr. Shiva filed an Emergent Appeal Application to the New Jersey Supreme Court.

On August 16, 2024 the New Jersey Supreme Court denied the Dr. Shiva's request to hear his Appeal.

<u>Defendants Put "The Cart Was Put Before the Horse"
And, Now Are Beating  Horse</u>

The aforementioned was done by the Defendants in spite of such adjudication and enforcement against the Pledged Candidate being premature, and not within their statutory authority. And to add further insult to injury, Defendants used their flawed analysis in denying the First and Fourteenth Amendment Rights to the Pledged Candidate, the then deny  First and Fourteenth Amendment Rights to the Elector Candidates – the actual candidates running for the Office of Electors.

<u>NEW JERSEY VIOLATED THE ELECTORS CLAUSE BY FLOUTING THE STATUTES GOVERNING PRESIDENTIAL ELECTIONS AND FABRICATING "LAWS" TO RATIONALIZE PREMATURE ADJUDICATION OF PRESIDENTIAL QUALIFICATIONS</u>

The Electors Clause requires states to appoint presidential electors "in such Manner as the Legislature thereof may direct." U.S. Const. art. I, § 1, ¶ 2; *see also Moore v. Harper*, 600 U.S. 1, 36 (2023) ("[S]tate courts may not transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections."); *Bush v. Gore*, 531 U.S. 98, 111–22 (2000) (Rehnquist, C.J., concurring).

The New Jersey Supreme Court, by denying Dr. Shiva's Emergent Appeal and upholding NJSOS' Final Decision violated the Electors Clause. The Electors Clause demands that power over presidential electors is in the state legislatures.  This means

that the neither the NJOAL nor the NJDOE nor the NJSOS can simply "make up" statutes, that get percolated up to the judiciary, to prematurely adjudicate and enforce presidential qualifications, for *holding* the Office, not for *running* for the Office.

But this is precisely what occurred in New Jersey. As the NJOAL judge stated in his Initial Decision:

> The next issue to be determined is whether an ineligible candidate for President can still appear on the ballot as an independent if their nominating petition is in conformity with the provisions of *N.J.S.A. Title 19*.
>
> While there are **no specific regulations or case law that address the issue, the way that other cases have treated this issue leads to the conclusion that an ineligible candidate for president should not be on the ballot**.

The NJOAL prematurely adjudicated Dr. Shiva's qualifications for President without any specific State Statutes. Period. This in and of itself is enough for this Court to reverse the New Jersey ruling. In addition, the State proceeded to also violate the rights of the presidential electors themselves by never providing them any due process in the "manner" in which they adjudicated their removal from the ballot. One cannot forget an Elector College exists, and the real candidates in New Jersey are the presidential elector candidates ("Elector Candidates") whose Pledged Candidate is "Dr. Shiva," whose *name* is used to label their slate.

The New Jersey Democratic State Party ("the Objector") named the wrong party in their Objector's Petition; specifically, they named the Pledged Candidate for President – Dr. Shiva - who is neither a New Jersey resident nor seeking the Office of Elector to be elected by New Jersey voters on November 5, 2024, nor within the

11

authority of the NJDOE or NJSOS to be removed from the ballot, or within the authority of the NJDOE or NJSOS to be denied ballot certification, since these offices are not certified to the ballot by the NJDOE or NJSOS. The New Jersey Election Code, defines the offices voted upon by New Jersey voters in general elections in even numbered years, and states in part as follows *N.J.S.A. 19:14-8* (emphasis added):

> **N.J.S.A. 19:14-8.** Such titles of office shall be arranged in the following order:
> **Electors of President and Vice President of the United States.**
> \* \* \*

N.J.S.A. 19:14-8 of the New Jersey Election Code does not include the office of "President of the United States" or "Vice President of the United States" as offices for which New Jersey voters vote at a general election, and logically, such an office could not be added to the New Jersey Election Code or to the New Jersey ballot because the U.S. Constitution preempts New Jersey law regarding the election of President and Vice President of the United States. U.S. Const. art. II, § 1.

By operation of the U.S. Const. art. II, § 1, cl. 2, and the New Jersey Election Code, New Jersey voters elect their Electors for President and Vice President of the United States; thereafter, those Electors that are elected at the general election proceed to vote by ballot in the Electoral College. Thus, it is the Electors that elect the President and Vice President of the United States through a separate ballot.[2]

---

[2] See https://www.archives.gov/electoral-college.

The election of **Electors** for the President and Vice President (rather than any potential pledged candidates) is confirmed by the New Jersey Election Code, which states:

> **N.J.S.A. 19:13-9 Presidential and Vice Presidential Electors - Time of Election.**
> [A]ll petitions and acceptances thereof nominating electors of candidates for President and Vice President of the United States, which candidates have not been nominated at a convention of a political party as defined by this Title, shall be filed with the Secretary of State before 4:00 p.m. of the 99th day preceding the general election in this Title provided.

The New Jersey Election Code, applies to election authorities and defines the process for the printing of ballots and the counting of votes for Electors (emphasis added) as follows (emphasis added):

> **N.J.S.A. 19:14-8.1 Ballots for Presidential Electors**:
>
> [ * * * ]
>
> When Presidential Electors are to be elected, <u>their names shall not be printed upon the ballot,</u> either paper or voting machine, but <u>in lieu thereof, the names of the candidates of their respective parties or political bodies for President and Vice-President of the United States shall be printed together in pairs under the title "Presidential Electors for."</u> All ballots marked for the candidates for President and Vice-President of a party or political body, <u>shall be counted as votes for each candidate for Presidential Elector</u> of such party or political body.

Therefore, by operation of the New Jersey Election Code, Elector Candidates' "**names shall <u>not</u> be printed upon the ballot,** either paper or voting machine, but <u>**in lieu thereof, the names of the candidates of their respective parties or political bodies for President and Vice-President of the United States shall be**</u>

13

**printed together in pairs under the title "Presidential Electors for"** and that a vote for any such pledged candidates for President and Vice President **"shall be counted as votes for each candidate for Presidential Elector"** confirming that New Jersey voters are voting for and electing the State's Electors, and that such a vote for a Presidential and Vice Presidential (pledged) candidate shall not be deemed and taken as a direct vote for such candidates for President and Vice-President. *N.J.S.A. 19:14-8*

Thus, New Jersey voters do not nominate or elect their candidates for President or Vice President, as confirmed by recent events[3]; pledged Presidential and Vice-Presidential candidates are not ballot-eligible in New Jersey nor are they voted upon by voters in <u>any</u> state, including New Jersey. Political party convention delegates are the ballot eligible candidates elected at a party's primary election; thereafter, established political party Electors (selected at each convention and certified pursuant to New Jersey Election) **alongside** independent (and new political party) Electors are the only ballot eligible candidates that are voted upon by New Jersey voters at the November 5, 2024 general election in relation to the offices of President and Vice President of the United States.

<u>Summary</u>

In summary, Plaintiffs fulfilled all requirements. Defendants went after the wrong person – Pledged Candidate – prematurely and unconstitutionally, and then

---

[3] Recent events are illustrative. Donald Trump's **delegates** were elected at the Republican primary (without a VP being identified), and Joe Biden's **delegates** were elected at the Democratic Party primary (also without a VP being identified). Candidates for President however were <u>not</u> nominated at either party's primary election. After strategic considerations by the DNC, Joe Biden announced on July 21, 2024 that he would not seek re-election, and Kamala Harris then announced her intent to seek the Democratic nomination as their Presidential candidate without declaring her VP candidate. Donald Trump was then rumored to be considering replacing his Vice President who was announced at the Republican convention.

applied that flawed ruling to Elector Candidates with neither subject matter nor personal jurisdiction. Therefore, the Plaintiffs have a high likelihood of success on the merits aforementioned.

**II. Plaintiffs Suffer Irreparable Harm If Injunctive Relief Is Not Granted.**

The established law is unequivocal on the point of irreparable harm when it comes to violations of the First Amendment. Even one day of such violation is irreparable harm. Defendants have violated the First Amendment rights of Plaintiffs. That is as irreparable as one gets. In addition, Elector Candidates are denied access to the ballot, for which they did everything right to achieve. The election will be over in less than fifty (50) days. One cannot run for the Office of Elector **in 2024**, ever again, if Plaintiffs are not allowed to be placed back on the ballot, given they did everything right. Such harm is ongoing: they are still not on the ballot.

### III. Granting Preliminary Relief Will NOT Result in Any Greater Harm to the Defendants

Defendants harm cannot compare in any manner to the immeasurable harm caused to Plaintiffs by Defendants actions. Defendants will likely cry about their "costs" of reprinting ballots. Such cost cannot compare or be measured in any manner to the harm caused to the violation of Plaintiffs First and Fourteenth Amendment rights.

### IV. Public Interest Favors Such Relief

Defendants seek to wish away the Elector College. They cannot. The Elector Candidates are the candidates. Plaintiffs rights have been violated. Without giving the injunction and relief sought, not only are the thousands who nominated the Elector Candidates disenfranchised but also the millions of voters in New Jersey disenfranchised, who will not have the opportunity to vote for them.

### CONCLUSION

For the aforementioned reasons, this court should provide Plaintiffs 'immediate relief as requested, and deny Defendants' Opposition to Plaintiffs' need for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted:

By: /s/Roseanna A. Sias
    Plaintiff Pro Se

By: /s/ Eileen L. McMenamin
    Plaintiff Pro Se

By: /s/ Basilia Tsikentzoglou
    Plaintiff Pro Se

By: /s/ Paul Testa
    Plaintiff Pro Se

By: /s/ John C. Wong
    Plaintiff Pro Se

Dated: September 20, 2024

Roseanna A. Sias
1239 Whitaker Ave.
Millville, NJ  08332
staff@hasjschool.org   609-805-2548

John C. Wong
158 Wayne St.
Jersey City, NJ  07302
johnwong2006@gmail.com  732-836-8508

Eileen L. McMenamin
211-A So. 10th Ave.
Highland Park, NJ  08904
eileenmc53@gmail.com  732-896-4664

Basilia Tsikentzoglou
276 4th Street,
Jersey City, NJ  07302
basiliat@yahoo.com  201-936-8961

Paul Testa
649 Windsor Ave
Maple Shade, NJ  08052
paul.testa@yahoo.com  856-520-5795

## Certificate of Service

We, the Plaintiffs Pro Se, certify that on September 20, 2024 we electronically filed this document with the Clerk of the Court via email, and have separately served a copy of this filing upon the Defendants shown below via email delivery to:

Attorney General of New Jersey: Matthew Platkin via email to NJAG.ElectronicService.CivilMatters@law.njoag.gov

**New Jersey Secretary of State** c/o: Lt.Governor Tahesha Way via Email: Tahesha.Way@sos.nj.gov

**New Jersey Division of Elections and Acting Director of NJDOE Donna Barber** c/o: Donna Barber via Email: Donna.barber@sos.nj.gov

/s/Roseanna A. Sias
Plaintiff Pro Se

/s/ Eileen L. McMenamin
Plaintiff Pro Se

/s/ Basilia Tsikentzoglou
Plaintiff Pro Se

/s/ Paul Testa
Plaintiff Pro Se

/s/ John C. Wong
Plaintiff Pro Se