## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Roseanna A. Sias,<br>Eileen L. McMenamin,<br>Basilia Tsikentzoglou,<br>Paul Testa, and<br>John C. Wong,<br>    Plaintiffs,<br>    *v.*<br><br>NEW JERSEY SECRETARY OF STATE<br>Tahesha Way, in her official capacity as Lt.<br>Governor and Secretary of State the State of<br>New Jersey;<br><br>NEW JERSEY DIVISION OF ELECTIONS;<br>Donna Barber, in her official capacity as<br>Acting Director for the New Jersey Division<br>of Elections,<br><br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
3:24–CV–08747–MAS–RLS

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS PLAINTIFFS' VERIFIED COMPLAINT

Pursuant to the Honorable Judge's request, Plaintiffs Pro Se Roseanna A. Sias, Eileen L. McMenamin, Basilia Tsikentzoglou, Paul Testa, and John C. Wong, file this response to Defendants' *Cross-Motion to Dismiss Plaintiffs' Verified Complaint.* On September 20, 2024, Plaintiffs filed an additional response to Defendants' *Opposition to Plaintiffs' Temporary Restraining Order and Preliminary Injunction*, as requested by this court.

The Defendants' *Cross-Motion to Dismiss* aims to assert two (2) arguments as the basis for demanding this court dismiss Plaintiffs' Verified Complaint:

1) Privity and claims preclusion; and,

1

2) An inalienable right of the State to prematurely adjudicate and enforce the qualifications for President against the pledged candidate of the Elector Candidates as the mechanism to remove Elector Candidates from State's ballot.

As discussed, and revealed herein, both of the Defendants' arguments are specious; therefore, this court must deny the Defendants' *Motion to Dismiss*.

## I. PRIVITY AND CLAIM PRECLUSION

The facts reveal that that Pledged Candidate Dr. Shiva Ayyadurai's "proceeding" took place at the New Jersey Office of Administrative Law ("NJOAL"), which was then rubber-stamped by the New Jersey Secretary of State ("NJSOS") and this Federal Court civil rights case of Plaintiffs, herein, are different.  There is no privity. The parties are different.  The claims are different, and the NJSOS has a very limited scope of authority to the Nomination Papers versus this federal court.

The precedential ruling by the Court in *Taylor v Sturgell* 553 U.S. 880 (2008) provides a framework for assessing the Defendants' specious arguments on privity and claim preclusion. Justice GINSBURG delivered the following opinion for a unanimous the Court in *Taylor v Sturgell* (emphasis added)*:*

> "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in* 2167*2167 *personam* in a litigation in which he **is not designated as a party or to which he has not been made a party by service of process**." *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). **Several exceptions, recognized in this Court's decisions, temper this basic rule. In a class action**, for example, a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation.

See *id.,* at 41, 61 S.Ct. 115. In this case, we consider for the first time whether there is a "virtual representation" exception to the general rule against precluding nonparties. Adopted by a number of courts, including the courts below in the case now before us, **the exception so styled is broader than any we have so far approved**.

Nevertheless, the D.C. Circuit held Taylor's suit precluded by the judgment against Herrick because, in that court's assessment, Herrick qualified as Taylor's "virtual representative.

**We disapprove the doctrine of preclusion by "virtual representation," and hold, based on the record as it now stands, that the judgment against Herrick does not bar Taylor from maintaining this suit.**

## A. There Is No Privity

First, this is a blatantly false statement made by Defendants:

It thus has preclusive effect on Plaintiffs, who are in privity with Ayyadurai, and prevents them from relitigating Ayyadurai's failed arguments as to why that petition should have been accepted.

This is false since there is there is no privity [of contract/legal] when it comes to First Amendment rights. Defendants have grossly violated the Plaintiffs and Elector Candidates' First Amendment rights (as well as Fourteenth Amendment rights). It is established law, that each of us has a right to assert our own rights. Those rights cannot be bought or sold, transferred or assigned to any other person; otherwise, the two major parties Democrats and Republicans would be buying up everyone's First Amendment rights, and then use them to support their own candidates.

<u>B. The Parties Are Different</u>

Second, the parties in this case are different than the parties in the NJOAL and NJSOS proceedings.  Fundamentally, one cannot sue one party, and then claim judgment applies to another person, just as one person cannot submit Nomination Papers, and later be substituted by someone else.  The Defendants must have great disdain for this court and the Plaintiffs to even attempt to assert such an argument. The Defendants adjudicated the lawsuit made by New Jersey Democratic State Committee NEITHER upon the Plaintiffs nor the Elector Candidates.  The lawsuit was filed upon Dr. Shiva Ayyadurai, the Pledged Candidate – "*New Jersey Democratic State Committee versus Dr. Shiva Ayyadurai*" -  not upon the Plaintiffs nor the Elector Candidates.   As Justice Ginsburg noted in her opinion for the unanimous Court (emphasis added): "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in* 2167\*2167 *personam* in a litigation in which he **is not designated as a party or to which he has not been made a party by service of process**." *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

Neither the Plaintiffs nor the Elector Candidates "were not designated as a party" and they were not "a party by service of process."  Imagine if the Defendants' patently absurd assertion was accepted by this federal court, then the entire framework of legal standards ceases to exist: judgement upon one person then applies to another person.  The Plaintiffs nor the Elector Candidates were part of a "class action" that included the Pledged Candidate Dr. Shiva Ayyadurai. If that were

the case, then the Defendants argument has a potential of being accepted by this court. But it cannot, since they are not part of a class action.

Moreover, *Taylor v Sturgell* does not apply to First Amendment or ballot access or Nomination Papers, since in general, there are no proxy candidates i.e. one person submits Nomination Papers, someone else then fills in for that person later. It is totally illogical to even contemplate trial in absentia: why not leave indicted citizens in a jail cell during the trial, they're represented by a public defender, certainly such arguments could be made. But we do not do that in the United States that Plaintiffs reside it. When constitutional rights are at stake, every person has a right to attend the proceeding that seeks to deny or deprive Constitutional rights, to confront witnesses, and to due process for a meaningful opportunity to present their own evidence. This did not happen for the Plaintiffs. Period.

Finally, it appears the Defendants seem be ignorant of the fact that the Elector Candidates, that includes the Plaintiffs, are running for the Office of Elector. The Electors' Pledged Candidate is not the "candidate." He is not running for ANY office in New Jersey. There is not Office of the President in New Jersey. Pledged Candidate is a resident of New Jersey. Most importantly, up until the early part of the Twentieth Century, the names of ALL Elector Candidates were being listed on the State ballots. So, imagine there are 10 Pledged Candidates for President, that means 140 names (14 times 10) names were being printed on the ballots. For simplification, States denoted the name of the Pledged Candidate to be a LABEL, a brand, a slogan, to denote the slate of the 14 Elector Candidates. This did not mean the Pledged Candidate was their "representative." Far from it, the Elector Candidates have the right to replace that Pledged Candidate, even after they are elected.

### B. The Claims Are Different and the NJSOS has a
### Limited Scope of Authority Versus a Federal Court

Third, the claims are different and the NJSOS has a limited scope of authority versus a federal court. The Plaintiffs did not bring a constitutional or Sec. 1983 claim in a NJSOS administrative proceeding. The NJSOS is not granted the authority to determine or issue a decision based upon constitutional or Sec. 1983 claims.

Federal claims are separate and distinct from NJSOS state agency proceeding. There is no jurisdiction for civil rights claims at the NJSOS. The NJSOS is limited to only review of nomination papers. The NJOAL and NJSOS proceedings are not court proceedings. Circuit courts (trial courts) are created through a state constitution and are courts of general jurisdiction. Unlike courts of general jurisdiction, where a statute creates subject matter jurisdiction that is not in the common law (i.e. review of nomination papers) then subject matter jurisdiction must be strictly reviewed, and narrowly construed and limited to only the statutory authority defined in the statute.

There are different parties between the two proceedings, and different claims being asserted. Plaintiffs in federal court could not assert their Sec. 1983 First Amendment claims in the NJSOS administrative proceeding for two reasons:

(a) they were not parties to that proceeding; and,

(b) statutory laws do not extend to the NJSOS any authority beyond review of nomination papers, and certainly no authority to determine [un]constitutionality as applied

## II. DEFENDANTS' PREMATURE ADJUDICATION AND ENFORCEMENT OF QUALIFICATIONS FOR PRESIDENT AGAINST ELECTOR CANDIDATES AND THEIR PLEDGED CANDIDATE WAS DONE STAUTORY AUTHORITY AND IS UNCONSTITUTIONAL

The Defendants attempt to conflate the Plaintiffs and Elector Candidates with the Pledged Candidate. They appear not to have studied basis American history in the grade school or wish to wish away the Electoral College, which they cannot and must not be allowed to do by this court.

Based on this conflation, they assert their next blatantly false statement upon Plaintiffs and Elector Candidates' Pledged Candidate,

> Title 19 plainly authorizes the Secretary of State to review objections to such nominating petitions. See N.J. Stat. Ann. 19:13-10, -11. That is it.

The Defendants forget that each state may only review Nomination Papers of **its own residents**, that seek ballot placement at the state general election, to be voted upon to fill offices that are identified by the State as being filled at the general election. Thus, each State can only grant authority to review Nomination Papers of its own residents. The US Constitution does not extend to any State the authority to review qualifications of any candidate for President or VP, nor impose any restrictions or additional qualifications other than stated in US Constitution. The US Congress has exclusive jurisdiction to review qualifications of President.

The facts are:

1. The Plaintiffs fulfilled every statutory qualification to be the independent presidential elector candidates ("Elector Candidates") pledged to presidential candidates Dr. Shiva Ayyadurai ("Pledged Candidate").

2.  Plaintiffs and Elector Candidates exercised their First and Fourteenth Amendment rights in choosing their Pledged Candidate of choice. It should be noted, Elector Candidates can also change the Pledged Candidate e.g. "faithless electors"

3.  The Plaintiffs achieved and exceeded every statutory requirement to be the Elector Candidates to be placed on the ballot with their slate denoted by the label "Dr. Shiva Ayyadurai/Crystal Ellis."

4.  In New Jersey as in other States, the Elector Candidates are the "candidates" for the Office of Elector; there is not an Office of President that the Pledged Candidate can run for in New Jersey nor in any other State.

5.  The Plaintiffs were qualified and fulfilled all requirements to be placed on the ballot.

6.  Defendants did NOT provide any notice to Plaintiffs of challenges to their candidacy as Elector Candidates

7.  Defendants did NOT provide due process to Elector Candidates to provide response to any of objections to their candidacy

A. Defendants Instead of Providing Due Process to the Elector Candidates, Prematurely Adjudicated and Enforced Against the Pledged Candidate Qualifications *to Hold* the Office of President, Which Exceeds Their Authority Particularly in Light of the Fact they Had No Statutes Passed by the Legislature Which Affords Them the Right to Do So

The facts (1) – (6) reveal that Defendants had no right whatsoever to throw Plaintiffs and Elector Candidates from the New Jersey ballot. They fulfilled every qualification and requirement to be on the ballot. Defendants instead of providing due process to Elector Candidates, "put the cart before the horse," and began

adjudicating the qualifications of their Pledged Candidate, Dr. Shiva Ayyadurai – "Dr.Shiva" - and even went so far as to enforce qualifications for *holding* the office of President against him to deny their Pledged Candidate his First and Fourteenth Amendment right from *running* for the Office.

Defendants must know, concerning the appointment of Electors of the President and Vice President of the United States, the U.S. Constitution creates and defines the Electoral College as the only process by which each State's Electors vote by ballot to elect the President and Vice President of the United States.

No State may add qualifications beyond those stated in the U.S. Constitution for ballot eligibility of New Jersey Electors for the President and Vice President of the United States, and may not directly or indirectly infringe upon federal constitutional protections; see e.g., *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827, 115 S.Ct. 1842, 1866 (1995).

On July 11, 2024, fourteen independent presidential elector candidates ("Elector Candidates") jointly submitted 1,294 signatures of New Jersey voters to qualify those fourteen Elector Candidates as New Jersey independent Electors at the November 5, 2024 general election; the fourteen Elector Candidates submitted nomination papers specifically for the U.S. Constitutionally defined office of "Elector of President and Vice President of the United States." U.S. Const. art. II, § 1.

The New Jersey Election Code requires submission of at 800 signatures in the aggregate from New Jersey voters. *N.J.S.A. 19:13-5.*

On August 1, 2024, The New Jersey State Democratic Committee, was identified as objector who filed an objector's petition against pledged independent presidential candidate Dr. Shiva Ayyadurai.  Please see objector's petition. The

Objector's Petition requested that the NJDOE issue a decision addressing Dr. Shiva Ayyadurai, not the Elector Candidates. None of the Plaintiffs or the Elector Candidates were named in the Objection.


B. The Defendants Went After the Wrong Person (the Pledged Candidate Dr. Shiva), Since the Right Person (Elector Candidates) Had Done Nothing Wrong

Dr. Shiva represented himself as Respondent Pro Se at the New Jersey Office of Administrative Law ("NJOAL") hearing on August 5, 2024.  On August 6, 2024, the OAL hearing officer issued his Initial Decision in which the hearing officer advised the NJSOS to remove Dr. Shiva from the general election presidential ballot.

The NJOAL's analysis was severely flawed, and a close analysis reveals how a low-level hearing officer's misapplication of the law - literally creating the law "on-the-fly" – gets percolated upward, and rubber-stamped by agency heads and even by judges, all the way to state supreme courts.

In approaching this analysis, the work of one of the leading scholars on ballot access and the rights of States to adjudicate qualifications of the Presidency, provides a "North Star" (emphasis added):

"States lack any power to evaluate qualifications in congressional elections, **and any power to evaluate qualifications in presidential elections arises solely from the force of its own statutes.** Because of the review of qualifications that occurs in the people, electors, political parties, and Congress, **the need for the state to review is slight**."[1]

_____

[1] Muller, Derek T. (2015) "Scrutinizing Federal Electoral Qualifications," Indiana Law Journal: Vol. 90: Iss. 2, Article 3.

States must be circumspect in prohibiting candidates for President from *running* for the Office, even though the candidate may be "ineligible" for *holding* the Office. As aforementioned, States should only do so if they have explicit statutes, passed by the State legislature, that allow them to do so. Why? Because, the Office of President is elected by all the people, and there are sufficient mechanisms - "**people, electors, political parties, and Congress" –** who can intervene to prevent an "ineligible" candidate from holding the Office.

Based on this North Star, the NJOAL's analysis has no basis in any State statute that allows the State of New Jersey to remove a presidential candidate from the ballot and to stop the candidate's running for the Office based on that candidate being "ineligible" to hold the Office. Since no such statute exists, the NJOAL hearing officer was grabbing for straws and built a "house of cards" to support his decision to remove Dr. Shiva off the ballot.

Here's how his flawed analysis went:

First, after acknowledging that Dr. Shiva and his Electors accomplished every State-mandated requirement to be on the ballot, the NJOAL hearing officer asserted that Dr. Shiva is "ineligible" to *hold* the Office of President since he is not "natural born," after which he posed the following question:

> The next issue to be determined is whether **an ineligible candidate for President can still appear on the ballot as an independent if their nominating petition is in conformity** with the provisions of *N.J.S.A. Title 19*.

Second, and most importantly, the NJOAL hearing officer admitted that he has no basis in any New Jersey Statute to make his decision (emphasis added); however, he will still proceed to do so:

> While there are **no specific regulations or case law that address the issue**, the way that **other cases** have treated this issue leads to the conclusion **that an ineligible candidate for president should not be on the ballot**.

Third, the NJOAL hearing officer's analysis should have just ended here! Given there are no "specific regulations" i.e. State Statutes, the officer should have stopped and simply said, "there is nothing stopping Dr. Shiva from *running* for the Office and being on the ballot, given Dr. Shiva fulfilled and exceeded very State-mandated requirement to be on the ballot." He should have further stated, it is up to the "**people, electors, political parties, and Congress**" to decide, given Dr. Shiva is not "natural born," whether he should be *holding* the Office. Period.

However, this hearing officer went to extremes to piece together a flawed framework, none of it based on New Jersey Statutes, to conclude:

> Respondent did not have to prove his eligibility prior to the challenge. **However, now that there is a challenge, it follows that he needs to prove his eligibility,** and since he cannot, he should not be placed on the ballot. Also, **it is logical that someone who is ineligible to be president cannot be on the presidential ballot, even as an independent.**

This nonsensical logic and disingenuity, goes against the face of New Jersey's own practice since 1972, as aforementioned, where New Jersey allowed many candidates to run for Office, who were clearly "ineligible" to hold the Office. **For example, New Jersey <u>allowed</u> Linda Jenness, Larry Holmes, Peta Lindsay, <u>all</u> below**

age 35; and even a Nicaraguan citizen Roger Calero, who was neither a "natural born" nor naturalized U.S. citizen, to *run* for President.

These individuals were *all* "ineligible" to *hold* the Office!

This fact was brought up by Dr. Shiva at the NJOAL hearing.  The response from the NJOAL hearing officer at the hearing on this matter was deafening silence. Moreover, the NJOAL hearing officer did not address this contradiction even in his NJOAL Initial Decision as to why those other candidates were given ballot access and Dr. Shiva was not.

In addition, the NJOAL erroneously sought, in the Initial Decision, to narrow the implications of the precedential *Trump v. Anderson* ruling to Section 3 of the Fourteenth Amendment, U.S. Const. amend. XIV, completely ignoring the aim of this Court: to prevent a "chaotic state-by-state patchwork." And, this is precisely what has occurred since the New Jersey ruling. Some States have taken Dr. Shiva of the ballot by unconstitutionally extending their authority, and others have kept him on the ballot.

This Initial Decision from the NJOAL was passed on to the NJSOS.  On August 7, 2024, the NJSOS issued their Final Decision and removed Dr. Shiva from the ballot to end his running for President. App. 6a-12a.  Here are the problems with the NJSOS' Final Decision:

1) The NJSOS simply cut-and-pasted the flawed NJOAL decision, likely assuming the low-level hearing officer's analysis was based on Statutes not on ad hoc legal theory;

2) The NJSOS' Final Decision repeatedly chants *Hassan, Hassan, Hassan*, while ignoring this simple fact: Hassan never got on the ballot in **any State**, never

had a real campaign, never had presidential electors who worked day and night to collect thousands upon thousands of petition signatures to get ballot access, etc.  In short, Hassan was not a bona fide or diligent candidate like Dr. Shiva;

3) The NJSOS' Final Decision is deafeningly silent on Linda Jenness, Peta Lindsay, Roger Calero and Larry Holmes – all "ineligible" candidates to *hold* the Office who NJSOS' allowed to run for the Office. In fact, the NJSOS allowed non-"natural born," non-naturalized citizen, Roger Calero on the ballot twice; and,

4) The NJSOS' Final Decision has no basis in law per that North Star as there is no State Statute that allows New Jersey election officials to prematurely disqualify a candidate from *running* for the Office by applying constitutional qualifications for *holding* the Office.

In fact, the NJOAL and the NJSOS decisions incite that very "chaotic state-by-state patchwork," which has now emerged in Dr. Shiva's situation, that Supreme Court so sought to avoid in *Trump v. Anderson*.

Following the flawed ruling of the NJSOS in their Final Decision, Dr. Shiva filed an Emergent Appeal Application to the Superior Court. The New Jersey Judiciary Appellate Division on August 13, 2024, however, dismissed Dr. Shiva's request, further erroneously and unconstitutionally rubber-stamping the NJOAL's flawed analysis that the State had the right to end Dr. Shiva's running for the Office,

since he may be "ineligible" from holding the Office. Specifically, the Appellate Division stated:

> Respondent admitted he is not a "natural born citizen" of the United States.  Therefore, he is ineligible to appear on the ballot as a candidate for the office of United States President in 2024 per the United States Constitution.  U.S. Const. art. II, § 1.

This judgement conflates "running" for the Office with "holding" the Office. The "natural born" provision is for "holding" the Office of President. This decision further asserts that the State has some authority to create extra-Constitutional qualifications i.e. that Dr. Shiva must be a "natural born" citizen to *run* for the Office. The State has no such right. Even if it did per that North Star, there would have to be a specific and explicit Statute passed by the New Jersey legislature.

**No such Statute exists!**

Moreover, even if a Statute existed, which does not, multiple and differing State Statutes would result in a "patchwork" that his Court seeks to avoid. In response to the flawed analysis and dismissal by the Appellate Division, Dr. Shiva filed an Emergent Appeal Application to the New Jersey Supreme Court.

On August 16, 2024 the New Jersey Supreme Court denied the Dr. Shiva's request to hear his Appeal.

<u>C. Defendants Put "The Cart Was Put Before the Horse"
And, Now Are Beating  Horse</u>

The aforementioned was done by the Defendants in spite of such adjudication and enforcement against the Pledged Candidate being premature, and not within

their statutory authority. And to add further insult to injury, Defendants used their flawed analysis in denying the First and Fourteenth Amendment Rights to the Pledged Candidate, the then deny First and Fourteenth Amendment Rights to the Elector Candidates – the actual candidates running for the Office of Electors.

<u>D. New Jersey Violated the Electors Clause By Flouting the Statutes Governing Pesidential Elections an Fabricated "Laws" To Rationalize Premature Adjudication of Presidential Qualifications</u>

The Electors Clause requires states to appoint presidential electors "in such Manner as the Legislature thereof may direct." U.S. Const. art. I, § 1, ¶ 2; *see also Moore v. Harper*, 600 U.S. 1, 36 (2023) ("[S]tate courts may not transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections."); *Bush v. Gore*, 531 U.S. 98, 111–22 (2000) (Rehnquist, C.J., concurring).

The New Jersey Supreme Court, by denying Dr. Shiva's Emergent Appeal and upholding NJSOS' Final Decision violated the Electors Clause. The Electors Clause demands that power over presidential electors is in the state legislatures. This means that the neither the NJOAL nor the NJDOE nor the NJSOS can simply "make up" statutes, that get percolated up to the judiciary, to prematurely adjudicate and enforce presidential qualifications, for *holding* the Office, not for *running* for the Office.

But this is precisely what occurred in New Jersey. As the NJOAL judge stated in his Initial Decision:

> The next issue to be determined is whether an ineligible candidate for President can still appear on the ballot as an

independent if their nominating petition is in conformity with the provisions of *N.J.S.A. Title 19*.

While there are **no specific regulations or case law that address the issue, the way that other cases have treated this issue leads to the conclusion that an ineligible candidate for president should not be on the ballot**.

The NJOAL prematurely adjudicated Dr. Shiva's qualifications for President without any specific State Statutes.  Period. This in and of itself is enough for this Court to reverse the New Jersey ruling.  In addition, the State proceeded to also violate the rights of the presidential electors themselves by never providing them any due process in the "manner" in which they adjudicated their removal from the ballot. One cannot forget an Elector College exists, and the real candidates in New Jersey are the presidential elector candidates ("Elector Candidates") whose Pledged Candidate is "Dr. Shiva," whose *name* is used to label their slate.

The New Jersey Democratic State Party ("the Objector") named the wrong party in their Objector's Petition; specifically, they named the Pledged Candidate for President – Dr. Shiva -  who is neither a New Jersey resident nor seeking the Office of Elector to be elected by New Jersey voters on November 5, 2024, nor within the authority of the NJDOE or NJSOS to be removed from the ballot, or within the authority of the NJDOE or NJSOS to be denied ballot certification, since these offices are not certified to the ballot by the NJDOE or NJSOS. The New Jersey Election Code, defines the offices voted upon by New Jersey voters in general elections in even numbered years, and states in part as follows *N.J.S.A. 19:14-8* (emphasis added):

**N.J.S.A. 19:14-8.** Such titles of office shall be arranged in the following order:

17

Electors of President and Vice President of the United States.
* * *

N.J.S.A. 19:14-8 of the New Jersey Election Code does not include the office of "President of the United States" or "Vice President of the United States" as offices for which New Jersey voters vote at a general election, and logically, such an office could not be added to the New Jersey Election Code or to the New Jersey ballot because the U.S. Constitution preempts New Jersey law regarding the election of President and Vice President of the United States. U.S. Const. art. II, § 1.

By operation of the U.S. Const. art. II, § 1, cl. 2, and the New Jersey Election Code, New Jersey voters elect their Electors for President and Vice President of the United States; thereafter, those Electors that are elected at the general election proceed to vote by ballot in the Electoral College. Thus, it is the Electors that elect the President and Vice President of the United States through a separate ballot.[2]

The election of **Electors** for the President and Vice President (rather than any potential pledged candidates) is confirmed by the New Jersey Election Code, which states:

> **N.J.S.A. 19:13-9 Presidential and Vice Presidential Electors - Time of Election.**
> [A]ll petitions and acceptances thereof nominating electors of candidates for President and Vice President of the United States, which candidates have not been nominated at a convention of a political party as defined by this Title, shall be filed with the Secretary of State before 4:00 p.m. of the 99th day preceding the general election in this Title provided.

---

[2]See https://www.archives.gov/electoral-college.

The New Jersey Election Code, applies to election authorities and defines the process for the printing of ballots and the counting of votes for Electors (emphasis added) as follows (emphasis added):

> **N.J.S.A. 19:14-8.1 Ballots for Presidential Electors**:
>
> [ * * * ]
>
> When Presidential Electors are to be elected, **their names shall not be printed upon the ballot,** either paper or voting machine, but **in lieu thereof, the names of the candidates of their respective parties or political bodies for President and Vice-President of the United States shall be printed together in pairs under the title "Presidential Electors for."** All ballots marked for the candidates for President and Vice-President of a party or political body, **shall be counted as votes for each candidate for Presidential Elector** of such party or political body.

Therefore, by operation of the New Jersey Election Code, Elector Candidates' "**names shall not be printed upon the ballot,** either paper or voting machine, but **in lieu thereof, the names of the candidates of their respective parties or political bodies for President and Vice-President of the United States shall be printed together in pairs under the title "Presidential Electors for"** and that a vote for any such pledged candidates for President and Vice President "**shall be counted as votes for each candidate for Presidential Elector**" confirming that New Jersey voters are voting for and electing the State's Electors, and that such a vote for a Presidential and Vice Presidential (pledged) candidate shall not be deemed and taken as a direct vote for such candidates for President and Vice-President. *N.J.S.A. 19:14-8*

Thus, New Jersey voters do not nominate or elect their candidates for President or Vice President, as confirmed by recent events[3]; pledged Presidential and Vice-Presidential candidates are not ballot-eligible in New Jersey nor are they voted upon by voters in <u>any</u> state, including New Jersey. Political party convention delegates are the ballot eligible candidates elected at a party's primary election; thereafter, established political party Electors (selected at each convention and certified pursuant to New Jersey Election) **alongside** independent (and new political party) Electors are the only ballot eligible candidates that are voted upon by New Jersey voters at the November 5, 2024 general election in relation to the offices of President and Vice President of the United States.

<u>E. Hassan Rulings Cannot Be Used to Justify Premature Adjudication of Presidential Qualifications in Light of Trump v. Anderson and Conflicts from Other State Supreme Court Rulings</u>

The Court granted petition for certiorari in *Trump v. Anderson,* and reversed the Colorado Supreme Court's decision since the Framers wanted **a direct link between the National Government and the people** of the United States, not a "patchwork."

Twelve years earlier, in 2012, also in the State of Colorado, in *Hassan v. Colorado 495 F. App'x 947 (10th Cir. 2012)*, the United States Tenth Circuit Court of Appeals of

---

3 Recent events are illustrative. Donald Trump's **delegates** were elected at the Republican primary (without a VP being identified), and Joe Biden's **delegates** were elected at the Democratic Party primary (also without a VP being identified). Candidates for President however were <u>not</u> nominated at either party's primary election. After strategic considerations by the DNC, Joe Biden announced on July 21, 2024 that he would not seek re-election, and Kamala Harris then announced her intent to seek the Democratic nomination as their Presidential candidate without declaring her VP candidate. Donald Trump was then rumored to be considering replacing his Vice President who was announced at the Republican convention.

Colorado made a decision to disqualify candidate Hassan for President and to deny *Hassan* ballot access in the 2012 Presidential election asserting:

> "...a state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are **constitutionally prohibited** from assuming office."

Specifically, the State referred to a provision in the Constitution, U.S. Const. art. II, § 1, cl. 5 for asserting such constitutional prohibition.

Neil M. Gorsuch, one of the nine Supreme Court Justices in *Trump v. Anderson* that had concluded on March 4, 2024 that States cannot disqualify and deny ballot access to a candidate running for President even on constitutional grounds, was then in 2012 the Circuit Court Judge, who authored the decision in *Hassan v. Colorado 495 F. App'x 947 (10th Cir. 2012)* that concluded **a State could disqualify** and deny *Hassan* access to the Colorado's state ballot on constitutional grounds.

Before the *Trump v. Anderson* decision of this Court, many on the "left" and legal scholars concluded that the *Hassan* ruling would be the precedential basis for removing Trump's name from the ballot.  However, the exact opposite took place.

Common sense leads to a simple explanation: since Hassan never got on the ballot in **any State**, never had a real campaign, neither had presidential electors nor volunteers who worked day and night to collect hundreds of thousands of petition necessary signatures to get ballot access, etc., he was not a bona fide or *diligent* candidate like Dr. Shiva and Trump.  Had Hassan actually gotten on the ballot, had a broad bottom's up movement, etc., it is likely Justice Gorsuch would have decided differently in Colorado in 2012.  States cannot deny access to a bona fide and diligent

candidate to States' ballots, unless that candidate does not meet specific and reasonable State Elector and Nomination Petition signature requirements. Only Congress can disqualify a candidate for President.

Moreover, state supreme courts rulings that conflicted with *Hassan* rulings foreshadowed th Court's ruling in *Trump v. Anderson*.  For example, in the case of Roger Calero, a Nicaraguan citizen, who was neither "natural born" nor a naturalized U.S. citizen, and patently "ineligible" to hold the Office of President, the New York Supreme Court in *Earl–Strunk v. N.Y. State Bd. of Elections*, 950 N.Y.S.2d 722 allowed him on the ballot and the court stated (emphasis added):

> Thus, this Court **lacks subject matter jurisdiction to determine the eligibility and qualifications of President OBAMA to be President, as well as the same for Senator MCCAIN or ROGER CALERO.** If a state court were to involve itself in the eligibility of a candidate to hold the office of President, a determination **reserved for the Electoral College and Congress,** it may involve itself in national political matters for which it is institutionally ill-suited and interfere with the constitutional authority of the Electoral College and Congress. Accordingly, **the political question doctrine instructs this Court and other courts to refrain from superseding the judgments of the nation's voters** and those federal government entities the Constitution designates as the proper forums to determine the eligibility of presidential candidates.

History has moved forward. The decision in *Trump v. Anderson* supersedes earlier rulings and resolves conflicts concerning Hassan. Only Congress can enforce qualifications against a candidate for President.

## CONCLUSION

In summary, Plaintiffs fulfilled all requirements.  Defendants went after the wrong person – Pledged Candidate – prematurely and unconstitutionally, and then applied that flawed ruling to Elector Candidates with neither subject matter nor personal jurisdiction.  There is no privity or claim preclusion for the aforementioned reasons.

This court must ask the Defendants if they believe they can justify kicking off the Plaintiffs and Elector Candidates from the  ballot, why is not such a decision arbitrary and capricious particularly given the history of New Jersey itself <u>allowing</u> independent presidential elector candidates for Pledged candidates, such as Linda Jenness, Larry Holmes, Peta Lindsay, who were <u>all</u> below age 35; and even a Nicaraguan citizen Roger Calero, who was neither a "natural born" nor naturalized U.S. citizen, to be on the ballot.[4] These pledged candidates were all clearly "ineligible" to *hold* the Office.  What made the Secretary of the State of New Jersey treat Plaintiffs so differently?  Is this because the Democratic Party machine of New Jersey sees Plaintiffs and the Elector Candidates as a real threat who will take significant votes from the presidential electors for their pledged candidate Kamala Harris?

Discovery in this lawsuit will reveal what motivated the Defendants to remove Plaintiffs and Elector Candidates who fulfilled all State-mandated requirements from the ballot. For the public interest alone, this case must move forward. Therefore, for this reasons and the others mentioned herein, the Defendants Motion to Dismiss must be denied.

---

[4] Richard Winger, *Ballot Access News,* https://ballot-access.org/

Respectfully submitted:

By:      /s/Roseanna A. Sias
               Plaintiff Pro Se

By:    /s/ Eileen L. McMenamin
               Plaintiff Pro Se

By:    /s/ Basilia Tsikentzoglou
               Plaintiff Pro Se

By:        /s/ Paul Testa
               Plaintiff Pro Se

By:        /s/ John C. Wong
               Plaintiff Pro Se

Dated: September 23, 2024

Roseanna A. Sias
 1239 Whitaker Ave.
Millville, NJ  08332
staff@hasjschool.org   609-805-2548

John C. Wong
158 Wayne St.
Jersey City, NJ  07302
johnwong2006@gmail.com  732-836-8508

Eileen L. McMenamin
211-A So. 10th Ave.
Highland Park, NJ  08904
eileenmc53@gmail.com  732-896-4664

Basilia Tsikentzoglou
276 4th Street,
Jersey City, NJ  07302
basiliat@yahoo.com  201-936-8961

Paul Testa
649 Windsor Ave
Maple Shade, NJ  08052
paul.testa@yahoo.com  856-520-5795

## Certificate of Service

We, the Plaintiffs Pro Se, certify that on September 23, 2024 we electronically filed this document with the Clerk of the Court via email, and have separately served a copy of this filing upon the Defendants shown below via email delivery to:

Attorney General of New Jersey: Matthew Platkin via email to NJAG.ElectronicService.CivilMatters@law.njoag.gov

**New Jersey Secretary of State** c/o: Lt.Governor Tahesha Way via Email: Tahesha.Way@sos.nj.gov

**New Jersey Division of Elections and Acting Director of NJDOE Donna Barber** c/o: Donna Barber via Email: Donna.barber@sos.nj.gov

/s/Roseanna A. Sias
Plaintiff Pro Se

/s/ Eileen L. McMenamin
Plaintiff Pro Se

/s/ Basilia Tsikentzoglou
Plaintiff Pro Se

/s/ Paul Testa
Plaintiff Pro Se

/s/ John C. Wong
Plaintiff Pro Se