

*State of New Jersey*

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL T.G. LONG
*Director*

September 30, 2024

**VIA CM/ECF**
Honorable Michael A. Shipp, U.S.D.J.
Clarkson S. Fisher Federal Building
Courtroom 5W
402 East State Street
Trenton, NJ 08608

    Re:    Roseanna A. Sias, et al. v. New Jersey Secretary of State, et al.
              Civil Action No. 3:24-cv-08747-MAS-RLS

              Defendants' Reply to Plaintiffs Opposition to Defendants' Motion to Dismiss
              Motion Date:  October 7, 2024

Dear Judge Shipp:

    Please accept this letter brief on behalf of Defendants in reply to Plaintiffs' opposition to Defendants' motion to dismiss.

## TABLE OF CONTENTS

PROCEDURAL HISTORY AND STATEMENT OF FACTS ............................ 2

ARGUMENT ................................................................................................ 2



HUGHES JUSTICE COMPLEX • TELEPHONE: (609) 376-2955 • FAX: (609) 633-8702
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

POINT I
    PLAINTIFFS' CLAIMS ARE PRECLUDED......................................................2

    A. The Claims in this Matter are Sufficiently Similar to Those
    Adjudicated in the State Agency Proceeding..................................................2

    B. Plaintiffs are Subject to Nonparty Preclusion Due to the Nature
    of their Relationship with Ayyadurai ..............................................................4

POINT II

    THE SECRETARY WAS AUTHORIZED TO REJECT PLAINTIFFS'
    NOMINATING PETITION ...............................................................................7

CONCLUSION ..................................................................................................12

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

Defendants rely on the Procedural History and Statement of Facts in the brief filed in support of Defendants' Motion to Dismiss.

## ARGUMENT

## POINT I

## PLAINTIFFS' CLAIMS ARE PRECLUDED

A. <u>The Claims in this Matter are Sufficiently Similar to Those Adjudicated in the State Agency Proceeding</u>

Despite Plaintiff's assertions to the contrary, the present action need not be brought under the same statute as the prior proceeding for claim preclusion to apply. *See e.g.*, *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984) (rejecting the view that a state court judgment on breach of contract and wrongful

interference claims could not have preclusive effect in a subsequent federal suit brought under 42 U.S.C. § 1983). Claim preclusion "does not require exact sameness," but only a "high degree of similarity between the two actions." *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 105 F.4th 67, 76 n.7 (3d Cir. 2024). Here, although the prior proceeding did not invoke 42 U.S.C. § 1983, both claims stem from the same circumstances, make the same arguments, and seek the same relief. Thus, the claims are sufficiently similar for claim preclusion to apply.

Further, Plaintiffs' contention that their claims cannot be precluded because the New Jersey Secretary of State "has a Limited Scope of Authority Versus a Federal Court" ignores the well-established principle that federal courts will give preclusive effect to state agency decisions. Pl. Opposition Br. at p 6. *See Crossroads Cogeneration Corp. v. Orange & Rockland Utilities*, Inc., 159 F.3d 129, 135 (3d Cir. 1998) ("factual findings of state agencies should be given the same preclusive effect they would be accorded in the courts of that state" and "applying preclusive effect to legal conclusions made by state agencies is favored as a matter of general policy" (internal quotation marks omitted)); *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009-10 (N.J. 2006) ("[i]t is generally recognized that the judicial principles underlying collateral estoppel and other doctrines of issue preclusion, such as *res judicata*, serve important policy goals that have currency in both administrative law

and judicial settings").

Even if Plaintiff's claims were not barred by claim preclusion, they are separately barred by issue preclusion, a doctrine with a more flexible standard. *See Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 660 (N.J. 2012). The Secretary of State determined that Ayyadurai is ineligible to hold the office of President of the United States and, therefore, the nominating petition for his electors was invalid. Ex. C. As discussed in Defendants' initial brief, consideration of this issue at the prior proceeding meets all requirements for issue preclusion. *See First Union Nat. Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007). With this issue precluded, Plaintiffs' claims must fail.

B. <u>Plaintiffs are Subject to Nonparty Preclusion Due to the Nature of their Relationship with Ayyadurai</u>

It is well established that nonparty preclusion is appropriate under a variety of circumstances. *Nationwide Mut. F Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3rd Cir 2009). While Plaintiffs correctly note that the Supreme Court in *Taylor v. Sturgell* rejected the concept of a "virtual representation" exception to the general rule against nonparty preclusion, the Court noted that, "[t]hough hardly in doubt, the rule against nonparty preclusion <u>is</u> subject to exceptions." 553 U.S. 880, 885, 893 (2008) (emphasis added). These recognized exceptions include certain limited circumstances when a nonparty was adequately represented by a party who

shares their interest or when a nonparty later brings suit as a proxy, representative, or agent for a party who is bound by a judgment. *Id.* at 894-95. Privity with a previously bound party has been found to preclude election related claims. *See, e.g., Lilly v. Heard*, 761 S.E.2d 46, 50 (Ga. 2014) (holding residents who filed a post-election challenge were precluded from doing so because they were in privity with residents who filed a pre-election challenge, based upon their shared common interest in having the public offices in their community held by legally qualified persons and because they were afforded standing under the same statutes to enforce that interest).

In at least one instance, this court has found a preclusive proxy relationship to exist based on several factors. *See Sai Ram Imps., Inc. v. Meenaskshi Overseas, LLC*, 2018 U.S. Dist. LEXIS 73800, *11-12 (D.N.J. Apr. 30, 2018). In *Sai*, this court found a preclusive proxy relationship where: 1) the plaintiffs' complaint primarily alleged facts pertaining to a party bound by a previous judgment, including that party's "history, business model, growth, and relationship with" the defendants, "while only a handful of paragraphs even mention[ed] Plaintiffs"; 2) the bound party "would be a major beneficiary of the requested declaratory judgment"; and 3) "the facts and arguments relied on by Plaintiffs [were] derived from [the bound party's] previous litigation." *Ibid.*

Here, as discussed in Defendants' moving brief at 16-17, the uniquely intertwined and dependent relationship between would-be electors and their pledged candidate brings Plaintiffs within the scope of this exception. Like in *Sai*, the factual allegations in Plaintiffs' Complaint are almost exclusively premised on Ayyadurai's litigation in the state proceedings, and the alleged errors that occurred therein. *See e.g.*, Complaint at ¶¶ 25-33. And, Ayyadurai would be a direct beneficiary to the requested injunction and declaratory judgment sought by Plaintiffs, in that his pledged elector candidates would be granted ballot access; indeed, Ayyadurai would be receiving the exact result he fought for in the state proceedings under the same arguments he raised in those proceedings. Complaint at ¶ 31 ("Pledged Candidate Dr. Shiva Ayyadurai disputed the subject matter jurisdiction of the Electoral Board and disputed personal jurisdiction over the 14 Electoral Candidates who were not named.").

At base, Plaintiffs are so much a proxy for the candidate whose name would appear on the ballot instead of their own that they cannot name a pertinent, practical way in which their interests are distinct from his. N.J. Stat. Ann. § 19:13-8.1. The Secretary was authorized to find that Ayyadurai is not qualified to hold the office of President, and he cannot take a second bite at the apple through his electors, whose case essentially re-raises the same arguments Ayyadurai has already brought

unsuccessfully in the state proceedings. *See, e.g.,* Pl. Opposition Br. at, *e.g.*, 12, 13-14, 16-17, 20-22; Complaint at ¶ 31. Accordingly, Plaintiffs' Complaint must be dismissed because their claims are precluded.[1]

## POINT II

## THE SECRETARY WAS AUTHORIZED TO REJECT PLAINTIFFS' NOMINATING PETITION

Plaintiffs' claims also fail on the merits. Contrary to their argument, Pl. Opposition Br. at pp. 7, 10, 14-15, the Secretary of State is explicitly authorized, and required, to hear objections to direct nominating petitions for presidential electors. *See* N.J. Stat. Ann. § 19:13-11 (directly authorizing the Secretary of State to issue a determination of an objection to "petitions nominating electors of candidates for President and Vice President of the United States"); *see also Purpura, et al. v. Obama*, STE 04534-12, 2012 N.J. AGEN LEXIS 179, at *4 (NJ OAL April 10, 2012) ("The nomination of any person to any public office may be challenged on the ground that the incumbent is not eligible for office at the time of the election."); *Williams v. Cruz*, STE 05018-16, Final Decision (April 13, 2016) (adjudicating a challenge to the eligibility of a presidential candidate). Nowhere does Title 19 limit

---

[1] In the alternative, if Plaintiffs do not have privity with Ayyadurai, then the Secretary's decision is nonetheless persuasive precedent on the dispositive question of Ayyadurai's qualifications for the reasons discussed below.

such Presidential petition objections to the qualifications of the electors themselves. As such, the Secretary of State was authorized to review the objection to the petition.

Plaintiffs' contrary reading of Title 19 would lead to a patently absurd result, in that it would insulate from review any constitutionally ineligible Presidential candidate's placement on New Jersey's General Election ballot, so long as his or her elector candidates were qualified to serve as electors. Such an absurd result must be avoided when interpreting New Jersey statutes. *See Sun Life Assurance Co. of Can. V. Wells Fargo Bank*, N.A., 208 A.3d 839, 849 n.3 (N.J. 2019) ("Statutes cannot be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition" (internal quotations omitted)).

Moreover, the Secretary's rejection of the petition in accordance with her authority under Title 19 does not impermissibly add qualifications to the eligibility requirements for presidential electors, as Plaintiffs suggest. Pl. Opposition Br. at p. 9. The United States Constitution authorizes the states to appoint Presidential Electors "in such a Manner as the Legislature thereof may direct." U.S. Const. Art. II, § 1, clause 2. That Title 19 permits the Secretary of State to review the validity of the nominating petition for electors hardly constitutes adding qualifications to the office, and even if it did, the federal constitution broadly permits the state legislatures to establish the manner by which electors are selected. Here, the New Jersey

Legislature has established that presidential elector nomination petitions may be objected to and reviewed by the Secretary of State. N.J. Stat. Ann. § 19:13-10 to -11.

In accordance with that statutory authority, the Secretary validly rejected the petition on grounds that the candidate Plaintiffs pledged themselves to was constitutionally ineligible to serve as President. Ex. A, Ex. B., Ex. C.; U.S. Const. Art. II, Sec. 1 ("No person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President."). Contrary to Plaintiffs' assertions, "a state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office." *Hassan v. Colorado*, 495 Fed Appx. 947, 948 (10th Cir. Sep. 4, 2012). Ayyadurai's ineligibility to serve as President rendered the nominating petition defective. That Plaintiffs and the other electors could have ultimately voted for a different presidential candidate as "faithless electors" is irrelevant to the fact that in the specific petition under review by the Secretary, the electors pledged themselves to an unqualified candidate. The Secretary validly rejected the petition under Title 19's provisions.

It is also irrelevant that electors for other unqualified presidential candidates

may have gained access to the General Election ballot in the past, as Plaintiffs allege. Pl. Opposition Br. at pp. 12-13.  For one, Plaintiffs fail to provide any context under which such candidates allegedly gained ballot access.  But in any event, the terms of Title 19 make clear that the Secretary's authority to further review the validity of a petition beyond confirming apparent conformity with Title 19 is triggered by an objection thereto.  *See* N.J. Stat. Ann. § 19:13-10 ("Every petition of nomination in apparent conformity with the provisions of [Title 19] shall be deemed valid, unless objection thereto be duly made in writing and filed with the officer with whom the original petition was filed. . .").  Thus, it is plausible that in the past, electors for unqualified presidential candidates have gained ballot access to the extent an objection was not filed against their petitions when the petition was otherwise in apparent conformity with Title 19.  That such candidates may have managed to gain access to the ballot is entirely irrelevant to the Secretary's authority in this matter, after an objection was filed, to review and reject the nominating petition for Ayyadurai's electors.

Plaintiffs' continued contention that the objection here improperly named Ayyadurai rather than the elector candidates themselves is likewise unavailing.  Pl. Opposition Br. at pp. 9-10, 17.  The objection was directed at the qualifications of Ayyadurai, not the elector candidates.  Moreover, Plaintiffs raise the same arguments

September 30, 2024
Page 11

in this matter as made by Ayyadurai in the OAL proceedings, underscoring that the issue at question is Ayyadurai's qualifications, not the electors', and thus that the focus of the OAL hearing was proper. Hence, it was appropriate for the matter to proceed against Ayyadurai, rather than his electors.

As to Plaintiffs' assertion that the ALJ and the Secretary of State have incorrectly interpreted *Trump v. Anderson*, 601 U.S. 100 (2024) as being restricted solely to the interpretation of Section 3 of the Fourteenth Amendment to the United States Constitution, Pl. Opposition Br. at p. 13, the Court's holding in that case was that "responsibility for enforcing Section 3 against federal officeholders and candidates rests with Congress and not the States." *Id.* at 117. The current case does not arise under Section 3. Plaintiffs' citation to dicta in that opinion in support of their arguments does not bind this court. *See, e.g., Cohens* v. *Virginia*, 19 U.S. 264, 6 Wheat. 264, 399-400, 5 L. Ed. 257 (1821) (Marshall, C. J.) (explaining why dicta is not binding).

Finally, Plaintiffs' assertion that the decision in *Trump v. Anderson* overturned the decision of the United States Tenth Circuit Court of Appeals in *Hassan v. Colorado* is incorrect. Pl. Opposition Br. at pp. 20-22. The *Hassan v. Colorado* decision affirmed the ruling of a magistrate judge which held as constitutional a Colorado statute requiring individuals seeking access to the

presidential ballot to submit a notarized statement of intent and an affirmation that they meet the constitutional qualifications for the office of President of the United States, given that the natural born clause had not been implicitly repealed by the Fourteenth Amendment nor rendered invalid under the "Absurdity Doctrine." *Hassan v. Colorado*, 495 Fed. Appx. at 948; *Hassan v. Colorado*, 870 F. Supp. 2d 1192, 1201 (D. Colo. 2012). The *Trump v. Anderson* decision did not hold or even imply that the natural born clause was implicitly repealed by the Fourteenth Amendment nor invalid under the Absurdity Doctrine.

## CONCLUSION

For these reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    s/Levi Klinger-Christiansen
      Levi Klinger-Christiansen
      Deputy Attorney General

DATED: September 30, 2024