**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSEANNA A. SIAS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 24-8747 (MAS) (RLS) |
| NEW JERSEY SECRETARY OF STATE TAHESHA WAY, in her official capacity as Lt. Governor and Secretary State of the State of New Jersey, *et al.*, | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon *pro se* Plaintiffs Roseanna A. Sias, Eileen L. McMenamin, Basilia Tsikentzoglou, Paul Testa, and John C. Wong's (collectively "Plaintiffs") Motion for a Preliminary Injunction to enjoin Defendants Tahesha Way (the "Secretary of State"), in her official capacity as Secretary of State of New Jersey; the New Jersey Division of Elections (the "Division of Elections"); and Donna Barber, in her official capacity as Acting Director for the Division of Elections (the "Acting Director") (collectively, "Defendants"), from removing Plaintiffs and nine other independent presidential elector candidates from the New Jersey ballot for the November 5, 2024 General Election (the "General Election"). (ECF No. 4.) Defendants opposed the Motion (ECF No. 10), and Plaintiffs replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiffs' Motion is denied.

**I.     BACKGROUND**

In this action, Plaintiffs challenge the constitutionality of Defendants' authority to hear an objection to Plaintiffs' nomination petition for Elector of President and Vice President of the United States ("Elector") that was brought against the presidential candidate to whom Plaintiffs pledged their votes. (Compl. 2, ECF No. 1.) Defendants ultimately rejected the petition and removed the Electors from the general election ballot, finding that the presidential candidate they pledged themselves to was not a "natural born citizen" and therefore was ineligible to hold office. (Defs.' Opp'n Br., Ex. A, ECF No. 10-3; Pls.' Reply Br. 5-6, ECF No. 14.) Plaintiffs now ask the Court to: (1) declare that the actions of Defendants violated their First and Fourteenth Amendment rights; (2) direct Defendants to nullify the decision rejecting Plaintiffs' petition; (3) enjoin Defendants from removing Plaintiffs from the general election ballot; (4) direct Defendants to certify Plaintiffs and the nine other Electors; and (5) issue a declaratory judgment consistent with the same. (Compl. 20.) The relevant facts are summarized below.

**A.     Parties**

*1.     Plaintiffs*

Plaintiffs are five New Jersey residents who seek to be Electors. (Compl. 3-4.) If elected at the General Election, they have all pledged their Electoral College votes to independent candidate Dr. Shiva Ayyadurai ("Ayyadurai") for President. (*Id.* at 4.)

*2.     Defendants*

The Division of Elections is a New Jersey state agency within the Department of State. (*Id.* at 5); N.J. STAT. ANN. § 52:16A-98(a). The Secretary of State and the Acting Director are named in their official capacities. (Compl. 5.)

### B.     Statutory Framework

For election of the President of the United States, the United States Constitution mandates that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." U.S. CONST. art. 2, § 1, cl. 2. New Jersey has put forth Title 19 of the New Jersey Statutes (the "Election Code") to direct this process. *See* N.J. STAT. ANN., § 19.

To appear on the general election ballot in New Jersey, Electors must "be nominated directly by petition," if they are not otherwise nominated "by the political parties at state conventions." *Id.* § 19:13-1. Petitions naming candidates "for office to be filled by voters of the entire State," such as Electors, must be addressed to the Secretary of State. *Id.* § 19:13-3. Such petitions must include "the names, places of residence and post-office addresses of the candidates for the offices to be filled." *Id.* § 19:13-4. Petitions nominating Electors for alternative political party candidates must be signed by 800 legally qualified voters of New Jersey, *id.* § 19:13-5, must be filed with the Secretary of State by the ninety-ninth day preceding the general election, *id.*, § 19:13-9, and may include the names of the candidates for President and Vice-President to whom the Electors pledge their vote. *Id.* The Division of Elections accepts such petitions on behalf of the Secretary of State, who is also the Chief Election Officer of New Jersey. *See id.* § 52:16A-98(b).

A petition that meets the Election Code requirements, including those enumerated above, "shall be deemed to be valid, unless objection thereto be duly made in writing and filed with the officer with whom the original petition was filed not later than . . . the fourth day after the last day for filing of petitions." *Id.* § 19:13-10. After an objection is filed, "[t]he officer with whom the original petition was filed"— for Electors, the Secretary of State—"shall in the first instance pass upon the validity of such objection in a summary way" by the ninety-third day before the general

election. *Id.* § 19:13-11. To make this determination in a contested case, the Secretary of State must provide the Office of Administrative Law (the "OAL") with the petition and objection so that an Administrative Law Judge ("ALJ") can conduct a hearing on the objection and make recommended findings of fact and conclusions of law. *Id.* §§ 19.13-11; 52:14B-10. The Secretary of State "shall adopt, reject or modify the recommended report and decision" and "shall state clearly the reasons for doing so." *Id.* § 52:14B-10. Once the Secretary of State makes this decision, a party may bring an appeal in the New Jersey Superior Court Appellate Division. *See* N.J. Ct. R. 2:2-3(a)(2).

If a nomination petition for Elector faces no objection or survives an objection, the Electors' "names shall not be printed upon the ballot." N.J. STAT. ANN. § 19:14-8.1. Instead, "the names of the candidates of their respective parties or political bodies for President and Vice-President of the United States shall be printed together in pairs under the title 'Presidential Electors for.'" *Id.* The Election Code also explains that "[a]ll ballots marked for the candidates for President and Vice-President of a party or political body, shall be counted as votes for each candidate for . . . Elector of such party or political body." *Id.*

In the upcoming General Election, county clerks finalized ballots for printing and sent them to the printers on September 3, 2024. *Id.* § 19:14-1; 19:11-1. Mail-in ballots were mailed to voters on September 21, 2024, *id.* § 19:63-9, and early voting begins on October 26, 2024, *id.* § 19:15A-1.

    **C.**    **The Secretary of State's Final Agency Decision:** *New Jersey Democratic State Committee v. Shiva Ayyadurai*

On July 11, 2024, Plaintiffs submitted nomination papers to the Secretary of State for the office of "Elector of President and Vice-President of the United States" with 1,294 signatures. (Compl. 8.) Three weeks later, the New Jersey State Democratic Committee (the "NJDSC") filed an objector's petition (the "Objection"), and an ALJ conducted a hearing to review the Objection

4

on August 5, 2024. (*Id.* 8-9, 11.) In an initial decision, the ALJ recommended that the NJDSC's challenge be granted, and Ayyadurai be excluded from the general election ballot because he is not a "natural-born citizen" as required by the United States Constitution, and is therefore ineligible to hold the office of President. (*See* Compl. 32; Defs.' Opp'n Br., Ex. B.) The Secretary of State adopted the initial decision in its entirety and rejected the nomination petition. (*See* Pl.'s Reply Br. 7-8; Defs.' Opp'n Br., Ex. A.) On August 13, 2024, Ayyadurai filed an emergency appeal with the New Jersey Superior Court Appellate Division, which denied the appeal, finding that: (1) the application did not provide a threat of irreparable injury; and (2) Ayyadurai admitted that he was not a "natural born citizen" of the United States and was therefore ineligible to appear on the general election ballot. (Defs.' Opp'n Br., Ex. C.) Ayyadurai thereafter filed an emergent appeal to the New Jersey Supreme Court, which was also denied. (*See* Compl. 11; Pls.' Moving Br. 7.)

**D.     Procedural History**

On August 26, 2024, Plaintiffs filed a three-count Complaint for declaratory and injunctive relief to prevent the Secretary of State, the Division of Elections, and the Acting Director from removing Plaintiffs and the nine other Electors from the New Jersey ballot for the General Election. (*See generally* Compl.) Plaintiffs brought this Complaint under 42 U.S.C. § 1983, asserting that their First and Fourteenth Amendment rights under the United States Constitution were violated when Defendants acted outside of their jurisdiction under the New Jersey Election Code. (*See id.* at 2.) Specifically, Plaintiffs' Complaint asserts that: (1) the Division of Elections and the Secretary of State lacked subject matter jurisdiction to oversee objections challenging the presidential candidate to whom an Elector has pledged their vote in a nomination petition (Count One); (2) the Division of Elections and the Secretary of State lacked personal jurisdiction over

Plaintiffs because they were not named respondents in the Objection (Count Two); and (3) the Objection was defective because it was not brought by a proper party and did not seek relief against the proper parties—the Electors who reside in New Jersey. (*See* Compl. 15-28.)

Shortly after filing their Complaint, Plaintiffs filed the instant Motion for Preliminary Injunction. (*See generally* Pls.' Moving Br.) Plaintiffs maintain that a preliminary injunction is warranted because they have shown: (1) a likelihood to succeed on the merits based on the provisions of the Election Code; (2) that they have "no adequate remedy at law for denial of their First Amendment right to associate and nominate the candidates of their choice and their right to vote for their candidates at the [G]eneral [E]lection;" (3) that there is no cost or burden to Defendants and state funds would in fact be saved by curtailing unauthorized proceedings; and (4) that the balance of equities weigh in favor of the relief sought. (Pls.' Moving Br. 7.) Defendants opposed the Motion (ECF No. 10), and Plaintiffs replied (ECF No. 14).

## II.  **LEGAL STANDARD**

In demonstrating a preliminary injunction is warranted, a plaintiff must establish the following elements: "(1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest." *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-4984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)). It is settled law that a preliminary injunction is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948, at 129-30 (2d ed. 1995)). "Moreover, where the relief ordered by the preliminary injunction is mandatory

and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)). To that end, mandatory preliminary injunctions should be granted "sparingly." *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976).

The first two factors—likelihood of success on the merits and irreparable harm—commonly referred to as the "gateway factors," are the "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Only once these gateway factors are met should a court consider the remaining two factors. *Id.* "A plaintiff's failure to establish any element . . . renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

Where, as here, a litigant is proceeding *pro se*, all filings are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

**III.   DISCUSSION**

For the reasons that follow, Plaintiffs' Motion is denied.

**A.   Likelihood of Success on the Merits**

The Court begins by considering whether Plaintiffs have shown a substantial likelihood of success on the merits to warrant the "extraordinary" relief of a preliminary injunction. *Novartis*

7

*Consumer Health*, 290 F.3d at 586; *see also Frumer v. Cheltenham Twp.*, 709 F.2d 874, 876 (3d Cir. 1983) (discussing that, to obtain preliminary injunctive relief, the moving party must first demonstrate "a reasonable probability of succeeding on the merits of his claim . . .").

Plaintiffs contend that they have established a likelihood of success on the merits "based upon the provisions of the Election Code." (Pls.' Moving Br. 7.) Plaintiffs' three counts can be distilled to the assertion that Defendants did not have the authority to hear the Objection against Ayyadurai. (*See* Compl. 15-27.) Specifically, Plaintiffs contend that the proper respondents to any objection to Plaintiffs' petition were Plaintiffs themselves—the Electors that New Jersey voters will actually vote for on election day—not Ayyadurai, the presidential candidate to whom the Plaintiffs have pledged their votes. (*See id.*) Defendants argue in opposition that Plaintiffs' claims are precluded under claim and issue preclusion doctrines (Defs.' Opp'n Br. 15-19), and Defendants were authorized to exclude Ayyadurai's electors from the ballot (*Id.* 19-27). The Court analyzes these arguments below.

### 1. *Preclusion*

Defendants argue that Plaintiffs' suit is precluded by the Secretary of State's final agency action under both claim and issue preclusion doctrines. (*Id.* at 19.) The Court considers these arguments below.

#### a. **Claim Preclusion**

"[T]he preclusive effect of a state court judgment or order is determined by the law of the state that rendered the judgment." *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 105 F.4th 67, 73 (3d Cir. 2024) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Since Plaintiffs challenge a judgment from a New Jersey agency, New Jersey preclusion law applies. In New Jersey, claim preclusion bars a suit if:

> (1) the judgment in the first action is valid, final, and on the merits; (2) the parties in both actions are the same or are in privity with each other; and (3) the claims in the second action arise from the same transaction or occurrence as the claims in the first action.

*Garris-Bey v. Aurora Loan Servs., LLC*, No. 11-6115, 2012 WL 694719, at *2 (D.N.J. Mar. 1, 2012) (citing *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991)).

Here, the second requirement is not met because the parties in both actions are not the same or in privity with one another. Defendants spend considerable time arguing that Plaintiffs are in privity with Ayyadurai without considering the other party in the Secretary of State's Final Decision: the NJDSC. (*See* Defs.' Opp'n Br., Ex. A.) The NJDSC is not the same party or in privity with Defendants in this action—the Secretary of State, Division of Elections, and the Acting Director—and therefore claim preclusion does not apply. *See French v. Fed. Home Loan Mortg. Corp.*, 619 B.R. 285, 292 (Bankr. D.N.J. 2020) (finding claim preclusion inapplicable where the defendant was not a party to the previous proceeding).

### b. Issue Preclusion

In New Jersey there are five prerequisites that must be satisfied to invoke issue preclusion:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Howard v. N.J. Div. of Youth & Fam. Servs.*, No. 08-4934, 2015 WL 5089536, at *5 (D.N.J. Aug. 27, 2015) (citing *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006)).

Here, the first requirement is not met because the issues tried in the state agency proceeding are not identical to those in the instant proceeding. In the final agency decision, the Secretary of State decided the NJDSC's Objection brought against Ayyadurai—namely, whether Ayyadurai

was eligible to run for President and be on the General Election ballot. (*See* Defs.' Opp'n Br., Ex. A at 1.) The Court interprets Plaintiffs' complaint here as presenting the issue of whether Defendants had the authority hear the NJDSC's Objection at all because they claim it was not brought against the proper parties, and as a result, the Objection should not have been considered. (*See generally* Compl.); *cf. Jalil v. Avdel Corp.*, 873 F.2d 701, 706-05 (3d Cir. 1989) (holding issue preclusion did not apply because the state court "did not address the same issues raised" in the federal action where the state court only reviewed "whether the arbitrator exceeded his authority," and plaintiff's federal court claim challenged the merits of the underlying claim).

### 2. *Defendants' Authorization to Exclude Plaintiffs from the General Election Ballot*

The United States Constitution mandates that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors . . . ." for election of the President of the United States. U.S. CONST. art. 2, § 1, cl. 2. The Supreme Court of the United States has "described that clause as 'conveying the broadest power of determination' over who becomes an [E]lector." *Chiafalo v. Washington*, 591 U.S. 578, 589 (2020) (quoting *McPherson v. Blacker*, 146 U.S. 1, 27 (1892)). As such, this "power to appoint an [E]lector (in any manner) includes power to condition his appointment—that is, to say what the [E]lector must do for the appointment to take effect." *Id.*

The New Jersey Legislature has provided the requirements for an appointment to Elector in the Election Code. *See* N.J. Stat. Ann., § 19. As previously discussed, "[e]very petition of nomination in apparent conformity" with the regulations is presumptively valid, but an objection to any petition can be submitted to the Secretary of State. *Id.* §§ 19:13-10; 19:13-11. If the Secretary of State receives such an objection, they "*shall* file his or her determination in writing in his or her office on or before the ninety-third day before the general election." *Id.* § 19:13-11

(emphasis added). These Election Code provisions both authorize and *require* the Secretary of State (and consequently the Division of Elections) to hear and determine the validity of objections to all nomination petitions. *See id.*

Plaintiffs nevertheless argue that Defendants did not have the authority to hear an objection concerning the qualifications of a presidential candidate to whom an Elector has pledged their vote because New Jersey voters only vote for Electors at the General Election, and Electors vote on a separate ballot in the Electoral College for President and Vice-President. (Compl. 13-14.) Put differently, the presidential candidate is technically not being voted for on the New Jersey ballot, and so his qualifications cannot be challenged. (*See id.*) This argument is not well taken. The Court must "avoid constructions that produce 'odd' or 'absurd results' or that are 'inconsistent with common sense.'" *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (quoting *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 454 (1989)). Plaintiffs' attempt to insulate the presidential candidate from an objection to the Electors' nomination petition ignores the reality of how the Electoral College operates.

As the Supreme Court has recognized, the United States has "a tradition more than two centuries old" where "[E]lectors are not free agents; they are to vote for the candidate whom the State's voters have chosen."[1] *Chiafalo v. Washington*, 591 U.S. 578, 596 (2020); *cf. id.* at 591 ("[A]lthough voting and discretion are usually combined, voting is still voting . . . ."). As such, if the Electors pledge themselves to Ayyadurai, and New Jersey voters vote for "Electors for" Ayyadurai, the Electors are expected to, and as history makes clear, overwhelmingly would, vote for Ayyadurai. Given this strong connection between Electors and the candidates to which they

---

[1] While Plaintiffs point to the possibility of a "faithless voter," (Pls.' Reply Br. 2), only one-half of one percent of Electors have submitted a "faithless vote" (excluding the 1872 election, when the Democratic Party's nominee died just after Election Day). *See Chiafalo*, 591 U.S. at 596.

pledge themselves, it would defy common sense for Defendants not to entertain an objection to a nomination petition based on the qualifications of the Electors' pledged presidential candidate.

Moreover, courts have held that when determining who can be on a presidential ballot, a State can enforce Article II, Section 1, Clause 5. ("No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President . . . ."). "[A] state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office." *Hassan v. Colorado*, 495 F. App'x 947, 948 (10th Cir. 2012); *see also Hassan v. New Hampshire*, No. 11-552, 2012 WL 405620, at *4 (D.N.H. Feb. 8, 2012) (upholding as constitutional "New Hampshire state laws requiring all presidential candidates to affirm that they are natural born citizens").

Plaintiffs' contention that they should have been named on the Objection to the nomination petition is similarly unavailing. As already discussed, the NJDSC[2] objected to Plaintiffs' nomination petition on the grounds that Ayyadurai was ineligible to hold office. (*See generally* Defs.' Opp'n Br., Ex. A.) In other words, the Objection had nothing to do with Plaintiffs' qualifications. It, therefore, properly named Ayyadurai—and not Plaintiffs—as the respondent. As Defendants properly heard and decided the Objection, Plaintiffs fail to adequately allege a constitutional violation under the First or Fourteenth Amendments.

---

[2] Plaintiffs argue without a citation that an objection can only be brought by a "a registered voter in the same district or political division as the objector [sic]." (Compl. 25.) The Election Code, however, does not limit who can bring an objection. *See* N.J. STAT. ANN. § 19:13-10. As Defendants note, political parties often bring objections to nomination petitions. (Defs.' Opp'n Br. 27 (citing *Camden Cnty. Democrats v. Cook*, STE 03281-21, Final Decision (Apr. 14, 2021); *N.J. Democratic State Comm. v. Forchion*, STE 0542-21, Final Decision (June 17, 2021)).)

As Plaintiffs have failed to show a likelihood of success on the merits as to their claims or that a preliminary injunction is in the public interest, they are not entitled to preliminary injunctive relief and their Motion seeking a preliminary injunction is therefore denied. *See e.g.*, *Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000) (noting that where plaintiffs are unable to establish a likelihood of success on the merits, the court need not consider the remaining conditions prerequisite to injunctive relief); *see also Emerson O. C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at *7 (D.N.J. Apr. 22, 2020) (declining to address remaining preliminary injunction factors after determining that the movant had not demonstrated a likelihood of success on the merits of his claim).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is denied. An appropriate order will follow this Memorandum Opinion.

*[signature]*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**